[Crim. No. 14033. First Dist., Div. Three. July 1, 1975.]

In re THEODORE KELLER on Habeas Corpus.

## COUNSEL

Treuhaft, Walker & Nawi and Robert E. Treuhaft for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, and Robert R. Granucci, Deputy Attorney General, for Respondent.

## OPINION

**SCOTT, J.**—This petition for writ of habeas corpus arises out of a finding that Theodore Keller was guilty of contempt of court and his sentence pursuant thereto. This court originally denied Keller's petition for habeas corpus. Thereafter, the Supreme Court ordered respondent Superior Court for the City and County of San Francisco to show cause before this court why the relief prayed for should not be granted, in light of *Yates* v. *United States* (1957) 355 U.S. 66 [2 L.Ed.2d 95, 78 S.Ct. 128].

Petitioner is a member of the faculty of San Francisco State University. On April 3, 1974, he was engaged in the chase of a man who had been identified by others as the assailant of a fellow faculty member in an attempted robbery. On April 4, 1974, petitioner signed a statement containing his description of the facts, which statement was presented to the police. On April 15, 1974, petitioner testified to these facts before the grand jury. However, long before trial, petitioner informed the district attorney that he would refuse, for reasons of conscience, to testify if called as a witness at the trial.

On February 25, 1975, during the trial of the man petitioner had chased, the court excused the jury in order to enable the district attorney to ascertain whether petitioner would testify as a witness. The following colloquy then occurred:

"[The District Attorney]

"Q. Mr. Keller, I intend to question you about matters occurring on April 3rd, 1974 at the San Francisco State University regarding an incident which you witnessed and I was informed by you that you had no intention of testifying in this matter. A. That's correct.

"Q. And is that the position that you are taking right now? A. Yes, it is.

"Q. At this particular time? A. Yes, it is."

The district attorney then made an offer of proof as to what Keller could testify to before the jury, if he would testify. The trial judge then asked Keller:

"Mr. Keller, would that be the sum and substance of what you could testify to if those questions were asked and developed in testimony?"

Petitioner replied as follows:

"If this is going to have any bearing—my answering your question just now is going to have any bearing on the outcome of this case, I will decline to answer. But if not I will be perfectly willing to answer it."

The district attorney then proceeded to ask several preliminary questions, followed by the following six questions which petitioner declined to answer:

(1) "Well, did you have occasion to have your attention or senses invited to some noise that sounded like a shooting?"

(2) "Mr. Keller, did you have occasion to pursue some person after some noise was heard by you?"

(3) "Mr. Keller, did you pursue on foot on April 3rd, 1974, at about two, 2:15 o'clock p.m., at the vicinity of the San Francisco State

University Campus, a young black man who turned to you, as you pursued him, and pointed a gun at you?"

(4) "Mr. Keller, did you see a police officer arrest that same person whom you pursued and chased on foot on April 3rd, 1974, at the hour of approximately two to 2:15 o'clock p.m. near the campus of the San Francisco State University?"

(5) "[With respect to the report given to the police department by petitioner] Does that bear your signature?"

(6) "[With respect to the same report] Mr. Keller, did you type that document yourself?"

As a result of his failure to answer these questions when ordered to by the court, petitioner was held in direct contempt on six separate counts and sentenced to 15 days in jail and $1,500 fine, five days each for refusing to answer questions (1), (3) and (5), and $500 fine each for refusing to answer questions (2), (4) and (6).

Petitioner contends (1) that the contempt order was improper because Keller was never called as a witness in the principal case, but was merely interrogated regarding whether he would answer if called; (2) that the trial court's order did not accurately reflect the record of the questions Keller refused to answer; and (3) that the imposition of cumulative penalties for petitioner's refusal to reply to a related series of questions pertaining to a single transaction was an abuse of discretion and beyond the jurisdiction of the court.

■ I. Keller's first two contentions are without merit. Although Keller did not testify before the jury, he was sworn as a witness outside the presence of the jury. His refusal to answer questions was clearly contempt of court pursuant to Code of Civil Procedure, section 1209, subdivision 9.[1] It is also clear that the court ordered him to answer the questions and his refusal to do so was contempt of court pursuant to section 1209, subdivision 5.[2] We do not find nor will we imply a

---

[1]Code of Civil Procedure section 1209 provides: "The following acts or omissions in respect to a court of justice, or proceedings therein, are contempts of the authority of the court: . . . 9. Disobedience of a subpena duly served, or refusing to be sworn or answer as a witness."

[2]Code of Civil Procedure section 1209, subdivision 5, provides: "Disobedience of any lawful judgment, order, or process of the court."

requirement that the court perform the idle act of having the witness refuse to testify before the jury, where the witness had made it clear that he would not testify.

A reading of the transcript discloses that the court was ordering Keller to answer the subject questions set forth in the order and Keller was refusing to answer them. The questions were clear and intelligible. Had Keller not understood the questions, his obligation was to ask for clarification, not to refuse to answer.

■ II. We turn now to petitioner's main contention: the propriety of multiple punishment for refusal to answer a series of questions where he had made it clear that he would answer no questions relating to the incident.

In *Yates*, petitioner was a high executive officer of the Communist Party in California, and with 13 codefendants was indicted and convicted of conspiracy to violate the Smith Act. The *Yates* court stated the facts and its holding as follows: "During the trial, petitioner refused on June 30, 1952, to answer 11 questions relating to whether persons other than herself were members of the Communist Party. The District Court held petitioner in contempt of court for each refusal to answer, and imposed 11 concurrent sentences of one year each, which were to commence upon petitioner's release from custody following execution of the five-year sentence imposed in the conspiracy case. This judgment was affirmed by the Court of Appeals. 227 F.2d 851. We granted certiorari. 350 U.S. 947. The principal question presented is whether the finding of a separate contempt for each refusal constitutes an improper multiplication of contempts. We hold that it does, and find that only one contempt has been committed." (355 U.S. at pp. 67-68 [2 L.Ed.2d at pp. 98-99].)

Petitioner in *Yates* testified in her own behalf and refused to answer questions on cross-examination, stating she refused to answer questions regarding membership in the Communist Party of various people known to her. The Supreme Court went on to discuss and interpret section 401, title 18 of the United States Code, defining the power of the court to punish for contempt and to review criminal contempt penalties under rule 42(a) of the Federal Rules of Criminal Procedure. Therefore, *Yates* was decided not on constitutional grounds but on an interpretation of federal statutes and rules. Thus, its effect upon this court is limited to whatever compelling logic it may have as analogous precedent. The *Yates* court stated (at p. 73 [2 L.Ed.2d at pp. 101-102]): "A witness, of

course, cannot 'pick and choose' the questions to which an answer will be given. The management of the trial rests with the judge and no party can be permitted to usurp that function. See *United States* v. *Gates,* 176 F.2d 78, 80. However, it is equally clear that the prosecution cannot multiply contempts by repeated questioning on the same subject of inquiry within which a recalcitrant witness already has refused answers. See *United States* v. *Orman,* 207 F.2d 148. [¶] Even though we assume the Government correct in its contention that the 11 questions in this case covered more than a single subject of inquiry, it appears that every question fell within the area of refusal established by petitioner on the first day of her cross-examination. The Government admits, pursuant to the holding of *United States* v. *Costello,* 198 F.2d 200, that only one contempt would result if Mrs. Yates had flatly refused on June 26 to answer *any* questions and had maintained such a position. We deem it *a fortiori* true that where a witness draws the lines of refusal in less sweeping fashion by declining to answer questions within a generally defined area of interrogation, the prosecutor cannot multiply contempts by further questions within that area. The policy of the law must be to encourage testimony; a witness willing to testify freely as to all areas of investigation but one, should not be subject to more numerous charges of contempt than a witness unwilling to give any testimony at all."

Respondent here suggests that if we adopt the rule of *Yates,* three of the findings of contempt would be valid, that is, questions (1) through (4) deal with one subject, and questions (5) and (6) each deal with separate areas. Respondent contends that here the witness carved out an area of refusal to testify which included only inquiry into the facts of the event, and that questions about his report to the police were not in that area. Keller, however, specifically advised the judge, as he had advised the prosecutor before trial, that he was not going to testify "regarding the incident," which can only reasonably be interpreted to be a refusal to testify as to any matter concerning his perceptions of the crime for which the defendant was being tried. All the questions asked related to the incident Keller had witnessed.

The logic of *Yates* would persuade us to hold that there was but one contempt, for which Keller could receive but one punishment. However, we must inquire as to whether a different holding is compelled by *Ex parte Stice* (1886) 70 Cal. 51 [11 P. 459]. There a witness in a criminal trial was called to testify and he refused to be sworn. He was found in contempt and ordered to pay a fine. Four days later, during the same trial, he was called and again refused to be sworn. He was again found in

contempt and sentenced to jail. The court stated (at p. 58): "Now, it is contended that the refusal to be sworn in the same case is but one offense . . . . We do not think that the refusal to be sworn on the 1st of March was the same offense for which the petitioner had already been punished. On the contrary, we think it was a different one." Thus, the concept of multiple contempts and punishments therefor is accepted in California for a person's refusal to be sworn and testify.

However, the *Stice* court went on to say (at p. 58): "It is argued that if the law be such as is here held, there will be no limit to the making of such orders; that a party may be called as a witness every day or every hour in the day during a protracted trial, and on each refusal to be sworn a penalty might be inflicted, to the great oppression of the subject of it. Such a course would be a great and unjustifiable abuse of power. There is no such case before us. Nor do we anticipate that such an extreme course will be pursued by any court."

It thus appears that the rationale of *Yates* and *Stice* is the same. The multiple findings of and punishment for contempt based upon refusal by Keller to answer a series of questions is in excess of the authority of the court to punish for what amounts to one contempt.

Respondent argues that *Yates* is distinguishable by the fact that under the federal law of contempt the court can impose punishment of up to a year in jail. Therefore, a single contempt can result in a significant punishment, whereas in California the maximum sentence is five days in jail and/or $500 fine. It is even arguable that *Stice* is distinguishable in that the authority of the courts to incarcerate for nonpayment of a fine has changed substantially in recent years. The *Stice* court approved a $500 contempt fine that was payable in the alternative by serving one day in jail for each one dollar thereof, or a total of 500 days in jail. Under present law such fines are payable, if at all (see *In re Antazo* (1970) 3 Cal.3d 100 [89 Cal.Rptr. 255, 473 P.2d 999] [indigents]), in the alternative by serving one day in jail for each $20 of the fine, or a possible total of 25 days in jail (Pen. Code, § 1205).

Additionally, we observe, Keller could have been prosecuted under Penal Code, section 166 for criminal contempt.

Penal Code, section 166 provides:

"Every person guilty of any contempt of court, of either of the following kinds, is guilty of a misdemeanor:

"6. The contumacious and unlawful refusal of any person to be sworn as a witness; or when so sworn, the like refusal to answer any material question."

A misdemeanor is punishable by imprisonment in the county jail for not in excess of six months and/or a $500 fine. (Pen. Code, § 19.)

Although this method of dealing with Keller's intractable conduct provides for the possibility of somewhat greater punishment, it is unsatisfactory in that it does not provide the advantage of a summary procedure available to the judge before whom the contemptuous conduct takes place.

Under some circumstances, an adverse party can be protected against a recalcitrant witness by the disallowing of his testimony in whole or in part, if he refuses to submit fully to examination. (*People* v. *Hathcock* (1973) 8 Cal.3d 599 [105 Cal.Rptr. 540, 504 P.2d 476]; *People* v. *McGowan* (1926) 80 Cal.App. 293 [251 P. 643]; *People* v. *Abner* (1962) 209 Cal.App.2d 484 [25 Cal.Rptr. 882]; *People* v. *Robinson* (1961) 196 Cal.App.2d 384 [16 Cal.Rptr. 484].) When, however, as here, the witness' testimony is necessary for either the prosecution or the defense, the only recourse presently available is either by the coercive power of the court to jail the offender while the trial is in progress (Code Civ. Proc., § 1219), or by the punishment power of the court as it was attempted in this case (Code Civ. Proc., § 1218), or by requesting that the person be prosecuted for violation of Penal Code, section 166, subdivision 6.

Punishment can be a deterrent, particularly to this kind of contemptuous conduct where the witness can be advised at the threshold of his contempt of possible substantial imprisonment for his wilful refusal to testify. Faced with the possibility of a substantial loss of freedom, the probabilities are that the witness will reevaluate his priorities and decide to testify. The trial judge here certainly cannot be faulted for the sentence he imposed. He was confronted by a person who, by his conduct, considered himself above the law.

The punishment actually meted out to Keller was minimal when compared to his attempt to frustrate the judicial process. The wilful refusal of a person to be sworn and to fully testify, absent a statutory or constitutional privilege not to testify, in a criminal trial, whether called by the People or by the defendant, is comparable to the crime of perjury. Both offenses attempt to frustrate the whole purpose of a trial by

interfering with the search for the truth and the justice that flows therefrom.

However, that the maximum punishment which we hold the court can here lawfully impose (five days in jail and/or $500 fine (Code Civ. Proc., § 1218)) may not be "significant" or "substantial" *enough* to effectuate its objective of promoting a recalcitrant witness to testify when confronted with punishment, such is not a proper ground on which to analyze whether one or more contempts has taken place.

The answer to this problem does not lie in attempting to distinguish *Yates* because of the punishment difference or reconcile *Stice* to current laws of punishment. The extent of possible punishment is not, as such, a distinguishing fact in the cases. The answer lies in legislative reform of the existing power of the court to punish for the type of contempt committed by Keller. We should not leave it to counsel to devise questions that might stand up as separate contempts or permit the recalling of a witness several days running and finding each refusal to testify to be a separate contempt. These are mere devices to permit effective punishment and are unfitting to the dignity of the judicial process.

Petition is granted and the cause is remanded to the trial court, with directions to modify the judgment in accordance with the views herein expressed and to resentence petitioner for one count of contempt.

Draper, P. J., and Brown (H. C.), J., concurred.