No. B026474. Second Dist., Div. Five. Nov. 30, 1987.]

MICHAEL D. CONN et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
FARMERS GROUP, INC., et al., Real Parties in Interest.

**COUNSEL**

Kurahara & Morrissey and Michael T. Morrissey for Petitioners.

No appearance for Respondent.

Epstein, Becker, Borsody, Stromberg & Green, James P. Mulkeen, Donna Fields Goldstein, Harry Rebhuhn, Robin L. Bell and Alan A. Plaia for Real Parties in Interest.

## OPINION

HASTINGS, J.*—Retired Associate Petitioner Conn is the plaintiff in a wrongful termination action. Real parties (collectively referred to as Farmers) represent a majority of the defendants. Petitioner Street is Conn's attorney. In this original proceeding, we review an order of the respondent court holding petitioners in contempt for disobeying a court order directing them to return to Farmers certain documents taken by petitioner Conn at the time of his departure from Farmers. The respondent court fined Conn and Street each $38,000 ($1,000 per day for 38 days). We issued an order to show cause at the direction of the Supreme Court. We now hold that the court correctly found petitioners to be in contempt, but erred in punishing petitioners for 38 separate acts of contempt.

### FACTS[1]

Prior to his departure from Farmers, petitioner Conn was the head of Farmers's investigation division. Originally, the purpose of the investigation division was to ferret out potential fraud by third parties (either insureds or claimants), but later the work of the division encompassed the investigation of internal fraud within various Farmers companies. The nature of the division's work was such that lawsuits by third parties were inevitable. Conn (who was personally named as a defendant in two lawsuits) acted as liaison between Farmers and outside counsel hired to defend Farmers.

Conn resigned his position at Farmers in February, 1985. Conn alleges that he was "constructively terminated," while Farmers claims that he voluntarily resigned.

When Conn left Farmers, he took with him, without the knowledge or consent of Farmers, three boxes of documents (over ten thousand pages in all), which he claimed were his "personal files." These included both "in-house" documents (notes, letters, memoranda and reports) and original

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

[1] The court is indebted to Farmers for providing the record in this case. The record which accompanies the petition filed by Conn and Street is not sufficient to afford adequate appellate review.

communications to and from outside counsel relating to lawsuits against Farmers (including the two lawsuits in which Conn was a named defendant).

In late 1985, Conn's deposition was noticed in the case of Diamond v. Farmers Insurance Exchange. At that time, Conn's attorney, Street, revealed to Farmers's attorneys that Conn had the three boxes of documents in his possession. Farmers, on the theory that it was better off with the documents in the possession of Street than of Conn, agreed that Street could have what Farmers considered to be "temporary custody" of the documents. Farmers then commenced a year-long effort to have the documents returned. A somewhat abbreviated chronology of these efforts is as follows:

On February 10, 1986, Farmers's corporate counsel, Michael Grinfeld, wrote to Street requesting return of the documents. The letter stated in part: "As you are aware, your client, Michael D. Conn, resigned his position with Farmers effective February 8, 1985. It has become apparent that prior to his resignation, Mr. Conn took with him literally thousands of documents, tapes or other tangible items of Farmers' property without any authority or consent whatsoever. Additionally, it has come to our attention that the breadth and scope of Mr. Conn's unauthorized taking of documents, etc. even extends to copies of files maintained by Farmers' counsel or other documents which would be subject to the attorney-client privilege or work product immunity. . . . In light of the above, I would request that any and all such documents, etc. presently in your possession or in Mr. Conn's possession be immediately returned to Farmers. Please contact me to make arrangements for them to be picked up at convenient times and locations. . . . If any of this information has been disclosed to any other person by either you or Mr. Conn, I would appreciate your advising me as to the extent and nature of such disclosures. . . ."

Street responded in a letter dated February 18, 1986, in which he indicated a willingness to provide Farmers with documents which were not "personal items of Mr. Conn's." Street's letter concluded: "In summary, I do not concur in your assertion of proprietary interest in the documents. As to your fear of dissemination of the information which was contained in the boxes, if there is something you are afraid of being disclosed to third persons, please specify the types of disclosures and the persons to whom you do not wish the documents disclosed to [sic]. However, these are documents produced by Farmers and/or my client, and I see no reason to hide the documents. However, I can see how some of the items might be damaging to Farmers, and it appears that is something you will have to live with."

Suffice it to say that negotiations did not commence in a spirit of compromise. The parties nonetheless managed to work out an arrangement where-

by counsel for Farmers would review and catalogue the documents at Street's office. On June 11 and 12, 1986, Grinfeld and Farmers's outside counsel, Alan Plaia, traveled to Street's office in San Jose, where they spent two days reading and sorting documents. Documents as to which Farmers claimed an attorney-client or work product privilege were set forth on a 27-page list describing 182 separate documents. Similar lists were made for other categories of documents.

The agreement which Farmers's attorneys made with Street at that time was that Street could keep the originals of nonprivileged documents, subject to a protective order to preserve their confidentiality. As to the documents which Farmers claimed to be privileged, Street would return the originals and any copies to Farmers, with the understanding that Street could pursue normal discovery methods to obtain the documents. Street, however, returned only the originals of the documents; according to Grinfeld, Street's explanation for retaining the copies was that he felt it would be "more convenient" if he did not return them. Although some documents were returned in August of 1986, matters remained at an impasse, for the most part, throughout the summer.

In September, 1986, Grinfeld sent Street a letter which he characterized as a "final demand" letter, summarizing Farmers's attempts to secure the return of the documents and once again requesting their return. Enclosed with the letter was an eight-page proposed "Stipulation and Order" drafted by Farmers, containing a detailed plan for return of the documents. Street declined to sign the stipulation and reiterated his position that the documents were the property of Mr. Conn: "With regard to Mr. Conn's possession of various documents, those documents came into his possession as a Farmers' [sic] employee and officer (with the exception of several items given to him by Farmers' employees after he left the company). Mr. Conn considered those items to constitute his personal files or copies of letters which he received as 'cc's.' In addition, given Mr. Conn's knowledge of the inner-workings of the management structure at Farmers, and their penchant for hiding documents during discovery in litigation in order to avoid disclosure of the truth, I am confident that Mr. Conn's decision to remove those items that he considered to be his personal files, was a wise decision. In addition, my client and I have cooperated with Farmers' requests for access to those documents at all times, and have returned the originals. Accordingly, I fail to see how Farmers has been inconvenienced in any manner, except to the extent of avoiding the compilation of those same documents for me during the discovery in this action." Street concluded his letter as follows: "In closing I want to re-emphasize that these documents are necessary for the preparation of this lawsuit and the meeting by Plaintiff of the various affirmative defenses that you have alleged. If we cannot agree

on the disposition of the items, I would strongly suggest that the appropriate way of dealing with the situation, would be to present the documents to a judge or referee for him or her to determine the claim of privilege and the relevancy of the documents. . ."

Somewhat more conciliatory letters were exchanged a few days later, when Street indicated that the matter could be resolved informally (that is, without court intervention), if certain changes were made in the proposed stipulation drafted by Farmers. The correspondence from this period indicates that Street was willing to return Farmers's "privileged" documents; the problem was that the parties could not agree as to which documents were privileged.

Finally, Farmers filed a formal motion in superior court in which it sought an order (1) "compelling plaintiff and plaintiff's counsel to surrender privileged documents misappropriated by plaintiff from defendants," (2) "restraining use or dissemination of defendants' privileged documents," (3) "compelling plaintiff and plaintiff's counsel to make an accounting of defendants' privileged documents in their possession and all disclosures thereof," (4) "disqualifying plaintiff's counsel," and (5) "imposing sanctions of fees and costs."

The matter came on for hearing before the respondent court on December 16, 1986. The court's minute order of that date directed Conn and Street to serve and file declarations under seal (1) identifying each document removed from Farmers's offices by Conn, (2) identifying each document, if any, received by Conn and/or Street from any other source, which Conn or Street believed were removed from Farmers's offices without its authorization; and (3) identifying each document, the contents of which were disclosed by any means to third persons and which fall within the description of documents above. Conn and Street duly filed their declarations, but the declarations failed to satisfy counsel for Farmers, so Conn filed a "Supplemental Declaration," attached to which were exhibits listing and categorizing all of the documents. These exhibits, along with those attached to the declaration of Michael Grinfeld filed with the motion, assisted the court in determining which documents should be returned to Farmers.

In an order filed January 30, 1987, the court directed petitioners to return substantially all of the documents taken. Excepted from the order were documents as to which Conn claimed a joint attorney-client privilege with Farmers because they related to the two lawsuits in which Conn was a named defendant. Included in the order, however, were some documents claimed by Conn to be "personal notes," a claim which the court felt was

unfounded "in light of the fact that some of the documents. . . appear to be letters from third parties. . . and the items claimed as personal appear to be concerning company business." The court's order was directed to "all originals and all copies of such documents," and "any notes, records, summaries or descriptions made of such documents by Plaintiff or anyone in Plaintiff's counsel's law firm." The deadline for return of the documents was February 10, 1987, at 4:30 p.m.

In addition to ordering return of the documents, the court granted Farmers' motion for sanctions, pursuant to Code of Civil Procedure section 128.5, in the amount of $8,000 against Conn and Street, jointly and severally. In stating its reasons for imposing the sanctions, the court, we believe, captured the essence of the entire dispute: "The Court finds that Plaintiff and Plaintiff's counsel have improperly refused to return privileged and otherwise improperly acquired documents precipitating the necessity of this motion. Regardless of whether some of the documents may be ultimately discoverable, defendants have, and have always had, the right to keep their own documents until met with proper discovery requests or ordered to disclose them by the Court. Plaintiff improperly removed documents essentially belonging to Defendant around the time he left Defendant's employ. Plaintiff's Counsel was notified of the removal by the February 10, 1986 letter (Exhibit A to Grinfeld declaration). Plaintiff's counsel refused to return the documents sent to him by Plaintiff (Exhibit B to Grinfeld declaration). After Defendant retained outside counsel to attempt to resolve the impasse, there appeared to be a good faith attempt at settling the dispute (See Exhibit A through H to Plaia declaration).

"A subsequent agreement concerning the return of privileged documents was not followed by Plaintiff's counsel (see Plaia declaration). Plaintiff's counsel has been maintaining a hard line position with regard to the documents which at all times have been improperly in counsel's possession. The prudent and good faith thing for Plaintiff's counsel to have done in February, 1986 would have been to immediately return the documents. The second best thing would have been to immediately accept the Plaia compromise proposed in the Spring and Summer of 1986. The third best approach for Plaintiff's counsel would have been to immediately agree to the October 1, 1986 Goldstein [Farmers' counsel] proposal (see Goldstein declaration). At every stage of the proceedings it is clear Plaintiff's counsel was treating the negotiations about these documents as if he had many options. In fact, Plaintiff and Plaintiff's counsel's position was always untenable and they should have taken the opportunity to extract themselves from their precarious position when they had the chance. Plaintiff's counsel chose not to, apparently either leveraging for more time or simply not wanting to return the documents because they were a windfall. Further, the opposition to this

motion also maintains the same intractable and ill-founded position. Plaintiff and his counsel's position is and has been totally and completely without merit and in bad faith."

The parties once again appeared in court on the morning of February 10, 1987, when Conn and Street filed a notice of appeal with respect to the court's January 30 order and asked the court for a stay of the order pending appeal.[2] (The court denied the request.) At the February 10 hearing, Street contended that he should not have to turn over the "Horowitz report" because it was not covered by Farmers's motion and because it was protected work product (because Street had made some notes on the copy). Street offered to return to Farmers the documents which Farmers had requested in the motion, and offered to deposit the remaining documents with the court pending appeal. Street contended that his primary concern was keeping his personal notes out of the hands of Farmers's counsel. The court rejected Street's offer to deposit the "annotated" Horowitz report with the court, commenting that the intent of the court's order was to have Street turn over the misappropriated documents *and* the "fruits" of those documents. Street was permitted to keep his notes and correspondence to and from Conn with respect to those cases in which Conn was a codefendant with Farmers.

On the afternoon of February 10, 1987, Street appeared at the offices of Farmers's counsel and delivered all of the documents which were the subject of the court's order, with the exception of those documents which Street claimed were privileged.

On February 26, 1987, Conn and Street petitioned this court for a writ of supersedeas to stay the court's January 30 order pending appeal. Since Street had turned over substantially all of the documents covered by the order, the petition was addressed primarily to the documents alleged to be privileged and to the award of sanctions. We denied the petition on February 26, 1987, and the Supreme Court denied a subsequent petition for review as untimely filed.

On March 5, 1987, Farmers obtained from the court an order to show cause (OSC) directing Conn and Street to appear before the court on March 20, 1987, to show cause why they should not be held in contempt for willfully disobeying the court's January 30 order. Farmers asked the court to impose a fine of $1,000 per day each against Conn and Street, for each day they continued to retain the remaining documents. Conn and Street

---

[2] Farmers cross-appealed from that portion of the court's order denying Farmers's motion to disqualify Street and his law firm, Kurahara and Morrissey.

opposed the OSC, arguing that (1) Conn could not be held in contempt for failing to turn over the documents, because he did not have them, and in any event he was not properly served with the OSC;[3] (2) the court's January 30 order was not a lawful order because it exceeded the scope of Farmers's motion, and because it was the subject of an appeal; (3) Farmers's remedy was to obtain a writ of possession, not a contempt order; and (4) Farmers was not prejudiced by not having the documents because they were sealed in envelopes and Street had stated he had no intention of using them. Conn and Street claimed that a finding of contempt would in effect be a "punishment for seeking appellate review."

At the hearing on the OSC, the court rejected all of petitioners' arguments and indicated its intention to impose a·daily fine of $1,000 not only for each day in the future that the documents were not turned over, but for each day since February 10 that they had not been turned over. At the conclusion of the hearing, Street's counsel gave the remaining documents to the court.

On March 26, the court filed its order holding Conn and Street in contempt of court. The court found that, based upon proof beyond a reasonable doubt, both Conn and Street had knowledge of the court's January 30th order, and had the ability to comply with the order but willfully failed to do so. The court further found that Conn and Street had each been in contempt of court for 38 days (beginning on Feb. 10, the date on which the documents were to be turned over), the January 30th order was not stayed by the pending appeal, and that the order was enforceable by the court's contempt power. The court fined Conn and Street each $38,000, or $1,000 per day for 38 days. (Code Civ. Proc., § 1218.)

On the day the court filed its order, Conn and Street filed in this court a petition for writ of review (once again accompanied by a woefully inadequate record). After we denied the petition, Conn and Street filed a petition for review in the Supreme Court, which granted review and retransferred the matter to this court.

Having reflected on the matter, we are still of the opinion that the contempt order was valid, for reasons which we state below. However, we do find merit in petitioners' argument that the punishment imposed ($38,000 each) exceeded the court's jurisdiction.

---

[3] After numerous attempts were made to personally serve Conn at his home, substituted service was made upon Mrs. Conn.

DISCUSSION

■ The power to punish for contempt or to use the contempt powers to obtain compliance with a court order is conferred on the court by statute. (Code Civ. Proc., § 1218.) "Disobedience of any lawful judgment, order, or process of the court" constitutes contempt. (Code Civ. Proc., § 1209, subd. (a)(5).)

■ Because no appeal lies from a judgment in civil contempt proceedings, review by extraordinary writ is appropriate in such cases. (*In re Holmes* (1983) 145 Cal.App.3d 934, 941 [193 Cal.Rptr. 790]; Weil & Brown, Cal. Practice Guide—Civ. Procedure Before Trial (Rutter Group 1987) par. 9:342.1.) Because a contempt proceeding is criminal in nature, due to the penalties which might be imposed (*In re Witherspoon* (1984) 162 Cal.App.3d 1000 [209 Cal.Rptr. 67]), guilt must be established beyond a reasonable doubt. (*Id.* at p. 1002) "The power to weigh evidence, however, rests exclusively with the trial court. [Citations.] Accordingly, it is well settled that our responsibility upon review is merely to ascertain whether there existed any substantial evidence to sustain the jurisdiction of the trial court. [Citations.]" (*In re Coleman* (1974) 12 Cal.3d 568, 572-573 [116 Cal.Rptr. 381, 526 P.2d 533].)

■ The substantive issues involved in a contempt proceeding are (1) the rendition of a valid order, (2) actual knowledge of the order, (3) ability to comply, and (4) willful disobedience. (Weil & Brown, *supra,* pars. 9:337-9:340.) All four were established here.

The record before the respondent court established that both Conn and Street had actual knowledge of the court's January 30th order; both admitted such knowledge when they filed declarations on February 10, 1987, requesting a stay of the order. Both had the ability to comply with the order, Street by surrendering the documents, and Conn by directing Street, his attorney, to do so. Petitioners concededly disobeyed the order. By way of a defense, petitioners challenged the validity of the order by filing an appeal. Unfortunately, petitioners were at a procedural disadvantage: they recognized that the order was not automatically stayed pending appeal, yet by the time they filed their response to the OSC they had failed to persuade the respondent court, this court, or the Supreme Court, to issue a stay. Thus, at the time the court made its finding of contempt, the January 30 order was in effect and presumed valid.

Although the January 30 order is still the subject of a pending appeal, we cannot appropriately review the order holding petitioners in contempt without in some way addressing the validity of the January 30 order here.

■ Petitioners contend that the January 30 order was invalid because it exceeded the scope of what was requested in Farmers's motion. Farmers specifically stated in its motion for return of the documents that it was *not* seeking return of the Horowitz report at that time, but would do so in a separate motion. Further, Farmers asked only for the documents themselves, not any "notes or memoranda" made on or about the documents by Conn and/or Street. Petitioners' argument is without merit. The court's powers are not delineated by the wishes of litigants. Rather, the court has the inherent power to control the proceedings before it and to make orders which prevent the frustration, abuse, or disregard of the court's processes. (*Neal* v. *Bank of America* (1949) 93 Cal.App.2d 678, 682 [209 P.2d 825].) The court's order that petitioners return the "fruits" of the misappropriated documents was within that power.

■ Next, petitioners contend that the court abused its discretion by ordering them to turn over to Farmers material protected by the attorney/client and work product privileges. This is the issue which petitioners stressed in their petition for review. It is not surprising that petitioners piqued the Supreme Court's interest by characterizing the issue as whether an attorney must betray his client's interest by disclosing "clearly privileged" materials, pending appellate review, or refuse to do so at his peril and risk being held in contempt of court. Were we presented with such a case, we would answer with a resounding "no." However, this is not a case involving documents which are "clearly privileged," nor is it a case of an attorney who has been martyred in the defense of his client's interests. This is a case in which the attorney himself created "privileged" documents by making notes on and about documents which he had no right to have in the first place. Throughout the dispute giving rise to the contempt order, Street's position was untenable, but his attitude was uncompromising. Conn is likewise culpable because he had the opportunity to direct Street to turn over the documents, and failed to do so.

The dilemma faced by the respondent court here was how best to repair the damage and deprive Conn and Street of an advantage which was wrongfully gained. Aside from disqualifying Street and his law firm as Conn's attorneys, the court's best choice was to "even the odds" by directing petitioners to turn over not only the misappropriated documents, but the "fruits" of those documents. The solution proposed by petitioners permitting them to retain the remaining "privileged" documents, would have allowed petitioners to profit from their own wrong.

Petitioners also make two procedural challenges to the court's order finding them in contempt: (1) that they were denied due process, and the right to confront and cross-examine witnesses, and (2) that Judge O'Brien

had no jurisdiction to hear the matter at all, because petitioners filed a timely affidavit pursuant to Code of Civil Procedure section 170.6. Neither of these contentions has merit.

At the hearing on the OSC re contempt, the court asked if there would be testimony, and counsel for Farmers responded that it would "rest on the declarations" with respect to the issue of whether or not the documents had been provided. Counsel for petitioners did not object to Farmers's decision not to call witnesses; rather, counsel made an hearsay objection to the declaration filed by Farmers's counsel, Donna Goldstein. Although the court overruled petitioners' evidentiary objection, Ms. Goldstein nonetheless indicated her willingness to testify as to the matters set forth in the declaration. Petitioners, however, made no attempt to call her to the stand, a course of action which they deliberately chose.[4]

■ Petitioners also contend that they presented a timely affidavit pursuant to Code of Civil Procedure section 170.6, and therefore Judge O'Brien was disqualified from hearing the matter. This contention is also without merit. Petitioners attempted to exercise a peremptory challenge upon the commencement of the contempt hearing. This hearing was the last in a long series of proceedings before Judge O'Brien relating to the propriety of petitioners' possession of the documents. By the time the matter reached the contempt stage, Judge O'Brien had already made several determinations which bore on the merits of the case (or at least that part of the case which had been entrusted to Judge O'Brien). (See *California Fed. Sav. & Loan Assn.* v. *Superior Court* (1987) 189 Cal.App.3d 267, 271 [234 Cal.Rptr. 413].) The peremptory challenge was therefore untimely.

■ Petitioners correctly contend, however, that the fine imposed by the court exceeded the court's jurisdiction.

Although there is substantial evidence to support the court's finding that petitioners were in contempt, the circumstances of the case are such that petitioners' failure to turn over the remaining documents can only be considered to be one act of contempt.

The preclusion of multiple punishments embodied in Penal Code section 654 is applicable to punishments for contempt under Code of Civil Procedure section 1218. (*Reliable Enterprises, Inc.* v. *Superior Court* (1984) 158

---

[4] Such testimony would have added nothing, since the only factual matter in dispute was whether petitioners had withheld certain documents, and petitioner Street admitted in his own declaration that the documents had been withheld. We note in passing that petitioners' hearsay objections were properly overruled, since all of the matters stated in Ms. Goldstein's declaration were within her personal knowledge.

Cal.App.3d 604 [204 Cal.Rptr. 786].) In *Reliable Enterprises,* the court imposed multiple fines for separate acts of contempt (violations of an injunction prohibiting lewd conduct at an "adult bookstore") which occurred on different days. The petitioners in *Reliable Enterprises,* proprietors of the "Adult World Bookstore," had been enjoined from allowing lewd acts on their premises. Despite the fact that an appeal of the issuance of the preliminary injunction was unsuccessful, nothing much changed at the Adult World Bookstore, prompting the People to seek a new preliminary injunction, which was granted. The sordid goings-on at Adult World continued, so the People obtained an order to show cause why petitioners should not be held in contempt for violating the injunction. Testimony at the contempt hearing revealed that numerous lewd acts (the details of which we need not mention here) continued on a daily basis at Adult World, and the petitioners, despite knowledge of and ability to comply with the injunction, made little or no attempt to rectify matters.

The court noted that the "crucial question" in determining whether separate adjudications of contempt are proper is whether these separate adjudications "were based upon separate insults to the authority of the court, not whether the insults happened to occur on the same or different days." (*Reliable Enterprises* v. *Superior Court, supra,* 158 Cal.App.3d at p. 621.) Under the circumstances of that case, the petitioners were properly found to have committed multiple acts of contempt, each of which was a "separate insult" to the court's authority.

The petitioners in *Reliable Enterprises* relied unsuccessfully on *In re Keller* (1975) 49 Cal.App.3d 663 [123 Cal.Rptr. 223]. *Keller,* however, is more analogous to this case than is *Reliable Enterprises.* Keller was a witness who had been convicted of separate acts of contempt for refusing to answer a series of questions relating to an assault he had witnessed. The Court of Appeal held that the multiple findings of and punishment for contempt based upon Keller's refusal to answer the series of questions was in excess of the authority of the court to punish for what amounted to one contempt, since Keller had made it clear at the outset that he would answer no questions related to the incident. The court in *Reliable Enterprises,* distinguished *Keller* as being premised on the "peculiar unfairness inherent in allowing a questioner to pile contempt upon contempt by asking a series of questions within an area of inquiry about which the witness has already indicated an unwillingness to answer." (*Reliable Enterprises, supra,* 158 Cal.App.3d at p. 622.)

In the present case, by the court's calculation, petitioners had already been in contempt for 24 days (or $24,000 worth each) by the time the court issued its OSC. By the time of the contempt hearing, petitioners had, by the

court's count, been in contempt for 38 days. Petitioners had thus incurred a total of $76,000 in fines before the contempt had been adjudicated; when the court stated its intention to hold petitioners in contempt, Street's counsel turned over the remaining documents. While petitioners' defense of "good faith" is not a defense to the charge of contempt, it must be considered in determining the appropriateness of requiring petitioners to accumulate an enormous fine while awaiting adjudication of the contempt.

We recognize the public policy arguments which favor Farmers's contention that petitioners were appropriately punished for 38 separate acts for contempt. An individual might well decide that disobedience of a court order is worth a $1,000 fine. However, this is not "a proper ground on which to analyze whether one or more contempts has taken place." (*In re Keller, supra,* 49 Cal.App.3d at p. 671.)[5]

We reach this conclusion with some reluctance, for in our opinion, petitioners clearly deserved a fine of more than $1,000 each. (In this case, Farmers's choice of the contempt route was unfortunate. A party in Farmers's position in the future might consider the more desirable possibilities of Code of Civil Procedure section 128.5, which affords the court more discretion in the amount of sanctions it imposes.)

Although we find that the fine imposed was beyond the court's jurisdiction, we find no merit in petitioners' argument that it was inappropriate for the court to direct that collection of the fine be undertaken by Farmers.[6]

The petition is granted. The cause is remanded to the respondent court with directions to modify its order filed March 26, 1987, to reflect that each petitioner herein is guilty of one act of contempt, and to sentence petitioners accordingly. The order is otherwise affirmed.

Feinerman, P. J., and Ashby, J., concurred.

A petition for a rehearing was denied December 21, 1987. Petitioners' application for review by the Supreme Court was denied February 18, 1988.

---

[5] An attorney might well reconsider his or her choice to "pay the $1,000," in view of new Business and Professions Code section 6089, which imposes on the court a duty to notify the State Bar when it imposes sanctions of $1,000 or more.

[6] Petitioners also contend that they were entitled to a jury trial, which they are not. (*Hawk v. Superior Court* (1974) 42 Cal.App.3d 108 [116 Cal.Rptr. 713].) The issue is currently pending before our Supreme Court in *Mitchell* v. *Superior Court,* No. 84-117.