BAKER, J., Concurring in Part and Dissenting in Part
For 82 years, Penal Code section 32 has proscribed "harbor[ing], conceal [ing] or aid[ing] a principal" in his or her commission of a prior felony. (Stats. 1935, ch. 436, § 1, p. 1484.) Today, the majority affirms convictions under this statute that are, so far as the Attorney General is aware, literally unprecedented in its 82-year history. (Rec. of Oral Arg. at 17:27-18:11, 19:11-19:35; see also Resp. Br. at 18-22.) No California case has ever sanctioned use of Penal Code section 32, the accessory statute, to mete out felony punishment for a witness who merely opts to remain silent (as distinguished from a witness who affirmatively tells some falsehood in a police interview or while on the witness stand to throw the police or the jury off track). Indeed, while I cannot claim to have conducted a fully exhaustive survey, I have discovered no court in any jurisdiction nationwide that has ever sanctioned this sort of an accessory after the fact prosecution. (See generally 2 LaFave, Substantive Criminal Law (3d ed. 2017) § 13.6(a), pp. 547, 555-556 [reviewing the "great majority of the [accessory after the fact] provisions in the modern codes [that] specify *763 the *643 kinds of aid which are proscribed"-including harboring or concealing the criminal, providing means of avoiding apprehension, concealing or tampering with evidence, plus "a few jurisdictions [that] have added the giving of false information in certain circumstances"-and observing, by contrast, "the mere failure to report the felony or to arrest the felon will not suffice" to support an accessory conviction].)
The oddity of today's decision is no accident, nor is it a manifestation of the old adage that there must be a first time for everything. It is rather a product of well-intentioned but flawed legal reasoning that courts have heretofore avoided: Believing the statutorily authorized criminal penalty for refusing to testify (six months in jail) is too light a punishment for refusing to testify against defendants charged with murder, the majority blesses the invocation of Penal Code section 32, which imposes a higher penalty. As I shall discuss, however, authority dating back at least 50 years explains that resort for what might be viewed as overly light penalties for contumacious witnesses must be to the legislative process. ( In re McKinney (1968) 70 Cal.2d 8, 12-13, 73 Cal.Rptr. 580, 447 P.2d 972 ( McKinney ); In re Keller (1975) 49 Cal.App.3d 663, 671, 123 Cal.Rptr. 223 ( Keller ); see also People v. Park (2013) 56 Cal.4th 782, 789, 156 Cal.Rptr.3d 307, 299 P.3d 1263 ["It is the Legislature's function ' "to define crimes and prescribe punishments ..." ' "].) A prosecuting office's decision to type up felony charges using a statute ill-suited to the task is no adequate substitute, and the majority errs by refusing to say so.
I
California has laws that are meant to compel recalcitrant witnesses to testify-and to punish them when they refuse. The civil contempt statutes, Code of Civil Procedure sections 1218 and 1219, allow a trial judge that finds a witness in contempt of court to imprison the witness for five days (with a $1,000 fine), or until the witness performs the act he or she omitted to perform when being found in contempt (assuming that act "is yet in the power of the person to perform"). ( Code Civ. Proc., §§ 1218, subd. (a), 1219, subd. (a).) Apart from these remedies, California also provides for criminal contempt punishment of a witness who refuses to testify when lawfully ordered to do so. Penal Code section 166 provides that a person who "contumacious [ly] and unlawful[ly] refus[es] ... to be sworn as a witness or, when so sworn, ... refus[es] to answer a material question" is guilty of a misdemeanor.[1] ( Pen. Code, § 166, subd. (a)(6).)
*644 Going back decades, California courts have heard-and rejected-arguments to evade the limits imposed by these statutory penalties on the ground that they are insufficiently severe to punish a refusal to testify. In McKinney , supra , 70 Cal.2d 8, 73 Cal.Rptr. 580, 447 P.2d 972, a witness refused to answer questions concerning when he first came into contact with a defendant charged with the murder of a police officer and assault with a deadly weapon. ( Id. at p. 9, 73 Cal.Rptr. 580, 447 P.2d 972.) The trial court purported to hold the defendant in criminal contempt under Penal Code section 166. ( Id. at pp. 9-10, 73 Cal.Rptr. 580, 447 P.2d 972.) The Attorney General conceded on appeal that the trial court had done so improperly but argued the sentence should be upheld because the court had inherent contempt power to imprison the witness that the *764 Legislature could not curtail. ( Id. at p. 10, 73 Cal.Rptr. 580, 447 P.2d 972.) Our Supreme Court rejected that argument, stating "[t]he Attorney General, though framing the limits of the court's inherent power in language of an 'adequate' sentence in fact argues for 'unbridled power' [citation]." ( Id. at pp. 12-13, 73 Cal.Rptr. 580, 447 P.2d 972.) The Supreme Court acknowledged a trial court's contempt power "must 'be sufficient to enable the courts to vindicate their authority and maintain the dignity and respect due to them' [citation]" but concluded the existing sanctions provided by the Legislature, i.e., the civil and criminal contempt statutes already described, were adequate for a trial court to vindicate its authority and maintain its dignity. ( Id. at p. 12, 73 Cal.Rptr. 580, 447 P.2d 972.)
In a case decided seven years later, Keller , supra , 49 Cal.App.3d 663, 123 Cal.Rptr. 223, the Court of Appeal again rejected an argument that would permit an end-run around the sanctions that the contempt statutes provide for refusing to testify. In that case, a college professor witnessed an attempted robbery and provided a statement to the police, but later informed the prosecution he would not testify if called as a witness at trial "for reasons of conscience." ( Id. at p. 664, 123 Cal.Rptr. 223.) The prosecution sought the professor's testimony anyway and he refused to answer six questions concerning the attempted robbery. ( Id. at pp. 665-666, 123 Cal.Rptr. 223.) The professor was held in contempt on six separate counts (corresponding to the six questions) and sentenced to 15 days in jail (five days each for three of the questions) and a $1,500 fine ($500 each for the other three questions). ( Id. at p. 666, 123 Cal.Rptr. 223.)
On appeal, Keller argued the imposition of cumulative penalties for his refusal to answer a series of related questions was improper. ( Keller , supra , 49 Cal.App.3d at p. 666, 123 Cal.Rptr. 223.) The Court of Appeal agreed and held the trial court exceeded its authority in making multiple contempt findings for what amounted to one contempt. ( Id. at p. 669, 123 Cal.Rptr. 223.) In the course of so holding, the Keller court acknowledged the argument that "the maximum punishment which [it held] the court can here lawfully impose (five days in jail and/or [a] $500 fine ( Code Civ. Proc., § 1218 ) ) may not be 'significant' or 'substantial' enough to effectuate its objective of promoting a recalcitrant witness to testify...." ( Id. at p. 671, 123 Cal.Rptr. 223.) But, importantly, the Court of Appeal explained this was "not a proper ground on which to analyze whether one or more *645 contempts has taken place" because "[t]he answer lies in legislative reform of the existing power of the court to punish for the type of contempt committed by Keller." ( Ibid . ) The Keller court specifically cautioned that permitting counsel "to devise questions that might stand up as separate contempts" were "mere devices to permit effective punishment and are unfitting to the dignity of the judicial process." ( Ibid . )
In the many years since McKinney and Keller , the Legislature has not seen fit to significantly increase the penalties set by the contempt statutes, which, with the possible exception of the coercive contempt remedy ( Code Civ. Proc., § 1219 ), continue to authorize a maximum of six months in jail. The prosecution in this case, however, apparently believed-mistakenly, in my view-that it had come upon a means of taking action where the Legislature has not.
II
Defendant Starletta Partee (defendant) is Nehemiah Robinson's sister and Toyrion Green's cousin. Both men, along with two *765 others, were charged with murder in connection with what was alleged to be the gang-related shooting of victim Anthony Owens (Owens).
After the alleged murder, Los Angeles Police Department detective John Skaggs interviewed defendant (the interview was recorded). During the interview, defendant made statements tending to incriminate the four men as having committed, or having been involved in, Owens' murder. As the majority opinion details, defendant thereafter failed to appear as a witness at the trial of the four men, the case against the men was dismissed, police later located defendant and took her into custody, prosecutors then re-filed the case against the men, and when called as a witness at the preliminary hearing in the re-filed case where all four men were present, defendant refused to be sworn to testify and refused to answer questions posed by the prosecutor. Following defendant's refusal, the murder case against defendant's brother, her cousin, and the other two men was again dismissed.
The prosecution responded by charging defendant with one count of criminal contempt under Penal Code section 166 for refusing to testify at the preliminary hearing. The prosecution also went further-invoking Penal Code section 32 to charge defendant with four felony counts of being an accessory to the murder after the fact (one count for each of the four accused murderers). The prosecution further elected to add a gang enhancement *646 allegation in connection with all five charged counts, which substantially increased the maximum prison sentence defendant faced if convicted.[2]
Defendant proceeded to trial on all five charged counts against her. The only evidence introduced by the prosecution in an effort to establish she "harbor [ed], conceal[ed], or aid[ed]" ( Pen. Code, § 32 ) her brother, cousin, and the other two men was defendant's silence in court, i.e., her refusal to take the witness oath and to answer any questions. Testifying in her own defense, defendant maintained she refused to testify in the murder case because she feared gang retribution and because the four defendants were either actually family or like family to her. Apparently unpersuaded,[3] the jury convicted defendant on all counts charged against her.
At sentencing, the experienced trial judge declined to impose anywhere near the maximum authorized custodial sentence.[4] Instead, and likely understanding the issue was no longer whether defendant could be coerced into testifying against her brother and the other accused men but rather how severely she should be punished for refusing to do so, the trial judge placed defendant on probation for three years.[5]
*766 The imposition of a probationary sentence, however, does not make this a no-harm-no-foul case. A felony conviction carries various consequences a misdemeanor does not, and as I now explain, defendant's silence when called as a witness was insufficient to prove a violation of the accessory statute.
III
All legal sources that courts properly consult lead to the same conclusion: a mere refusal to testify is not a proper basis for a Penal Code section 32 prosecution. The conclusion flows from the text of the accessory statute as informed by established canons of statutory interpretation; from California precedent that has addressed the bounds of who may be prosecuted as an *647 accessory; and from the laws and practices of sister states, some of which recognize the special problem of punishing a witness for refusing to incriminate family members.
A
Penal Code section 32 provides in full as follows: "Every person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony." The elements of the offense therefore required proof that defendant both "harbored, concealed, or aided" the accused murder defendants and did so with the intent they avoid trial, conviction, or punishment. ( People v. Tran (2013) 215 Cal.App.4th 1207, 1219, fn. 7, 155 Cal.Rptr.3d 803 [listing all elements of a Penal Code section 32 violation].) The majority's extended discussion of defendant's intent correctly concludes that element was satisfied. But intent is not the critical issue in this case. What was lacking is proof that defendant's silence amounted to harboring, concealing, or aiding her brother and his confederates.
No one believes there was evidence that would allow the jury to conclude defendant "harbored" or "concealed" defendant and the other three men-not the Attorney General and not the majority. The meaning of those verbs simply would not support such a finding. So the question of affirmance or reversal of the Penal Code section 32 convictions reduces to what "aid[ed]" means as used in Penal Code section 32 and whether defendant's preliminary hearing silence meets that definition.
The ordinary understanding of the word "aid" is susceptible to more than one definition, but most suggest some affirmative act of assistance. Oxford's definition, for instance, states the verb means "[t]o give help, support, or assistance to (a person); to relieve from difficulty or distress, to succor." (Oxford English Dict. Online (2018) http://www.oed.com/view/Entry/4303?rskey=TgKZpp& result=5 & isAdvanced=false#eid [as of March 19, 2018].) The element of affirmative assistance that is suggested by that definition is consistent with common usage; one would not usually say, for instance, that when two rival companies intend to bid on a contract and one fails to submit its bid on time, the untimely bidder has come to the aid of the other company.
*648 Insofar as there is ambiguity in Penal Code section 32's use of the term "aided," however, the venerable ejusdem generis canon of statutory interpretation assists *767 (aids, if you will) in resolving it.[6] "[T]he principle of ejusdem generis suggests that when ' "specific words follow general words in a statute or vice versa," ' the general words ordinarily are best construed in a manner that underscores their similarity to the specific words." ( California Cannabis Coalition v. City of Upland (2017) 3 Cal.5th 924, 939, 222 Cal.Rptr.3d 210, 401 P.3d 49.) With regard to the text of Penal Code section 32, the general word "aids" follows the more specific words "harbors" and "conceals," and a potentially broader understanding of "aids" should instead be cabined to meanings more akin to "harbors" and "conceals."
As we have already seen, there is not even an argument that what defendant did here would constitute harboring or concealing. And as a conceptual matter, the common usage of the words harbor and conceal incorporates an element of affirmative assistance-the provision of food or shelter, or acts taken to hide something from view or discovery. ( People v. Garnett (1900) 129 Cal. 364, 366, 61 P. 1114 ["The word 'conceal,' as here used, means more than a simple withholding of knowledge possessed by a party that a felony has been committed. This concealment necessarily includes the element of some affirmative act upon the part of the person tending to or looking toward the concealment of the commission of the felony"] ( Garnett ); see also United States v. Shapiro (2d Cir. 1940) 113 F.2d 891, 892-893.) Penal Code section 32's use of "aids" should be understood similarly, i.e., to permit conviction only where an accused aids a felon in some affirmative sense.
This element of affirmative assistance went unsatisfied by the proof at trial. Defendant's conduct was entirely passive-remaining silent when asked to take the witness oath and saying nothing when the prosecutor posed a series of questions to see if she would testify. While it might fairly be said defendant refused to aid the prosecution, that does not mean she also thereby aided her brother and the other accused men within the meaning of Penal Code section 32.
B
California cases that have addressed the meaning of Penal Code section 32 support the conclusion I reach. The majority concludes otherwise by applying precedent incorrectly.
*649 Let us begin with the meaning of Penal Code section 32 as a general matter. Our Supreme Court has explained, as I have concluded from the text of the statute, that there must be proof of affirmative assistance to obtain a Penal Code section 32 conviction: "The gist of the [ Penal Code section 32 ] offense is that the accused ' "harbors, conceals or aids" the principal with the requisite knowledge and intent. Any kind of overt or affirmative assistance to a known felon may fall within these terms.... "The test of an accessory after the fact is that, he renders his principal some personal help to elude punishment [ ]-the kind of help being unimportant." [Citation.]' ( People v. Duty (1969) 269 Cal.App.2d 97, 104 [74 Cal.Rptr. 606] [ ].)" ( People v. Nuckles (2013) 56 Cal.4th 601, 610, 155 Cal.Rptr.3d 374, 298 P.3d 867 ( Nuckles ); see also Garnett , supra , 129 Cal. at p. 366, 61 P. 1114 ["[C]oncealment necessarily includes the element of some affirmative act upon the part of the person tending to or looking toward the concealment of the commission of the felony.
*768 Mere silence after knowledge of its commission is not sufficient to constitute the party an [accessory]"].) The majority quotes this language from Nuckles but fails to accord it the significance it deserves (particularly the Court's reference to affirmative assistance) when analyzing the sufficiency of the evidence to support the Penal Code section 32 convictions.
Furthermore, the Nuckles court cited the Court of Appeal's decision in People v. Duty , supra , 269 Cal.App.2d 97, 74 Cal.Rptr. 606 ( Duty ) with approval, and Duty even more precisely addresses the meaning and scope of Penal Code section 32 as relevant to the key issue presented here. In Duty , there was evidence that the defendant provided a false alibi for another suspected of arson. ( Id. at pp. 102-103, 74 Cal.Rptr. 606.) The question was whether this "inferably false statement" to the fire investigators was sufficient to convict the defendant as an accessory after the fact. ( Id. at p. 103, 74 Cal.Rptr. 606.)
The Court of Appeal observed that, at the time of its decision (in 1969), the question of "[w]hether a falsehood to the police or other public investigators may violate the accessory statute is a new question in California." ( Duty , supra , 269 Cal.App.2d at p. 103, 74 Cal.Rptr. 606.) The court explained that "[a]ccording to some American decisions, the offense is not committed by passive failure to reveal a known felony, by refusal to give information to the authorities, or by a denial of knowledge motivated by self-interest. On the other hand, an affirmative falsehood to the public investigator, when made with the intent to shield the perpetrator of the crime, may form the aid or concealment denounced by the statute." ( Id. at pp. 103-104, 74 Cal.Rptr. 606.)
The Duty court upheld the defendant's accessory conviction, but only because the defendant "had actively concealed or aided [the suspected arsonist] by supplying an affirmative and deliberate falsehood to the public authorities," which meant there was "more than passive non-disclosure."
*650 ( Id. at p. 104, 74 Cal.Rptr. 606.) Later California cases continue to adhere to this same principle: that an affirmative false statement can qualify as aiding an accused felon and may support an accessory after the fact conviction, but mere passive non-disclosure may not. (See, e.g., People v. Plengsangtip (2007) 148 Cal.App.4th 825, 838, 56 Cal.Rptr.3d 165 ["Indeed, a statement that one knows nothing about a crime, even if false, is equivalent to a passive nondisclosure or refusal to give information, which is insufficient to support an accessory charge"] ( Plengsangtip ); People v. Nguyen (1993) 21 Cal.App.4th 518, 539, 26 Cal.Rptr.2d 323 [citing Duty for the proposition that "in some circumstances supplying an affirmative and deliberate falsehood to public authorities, such as by providing a false alibi, is sufficient to make the relator an accessory" but holding nothing in the defendant's statement to police investigators (which downplayed his role at the scene of the robberies) went so far].)
Despite the lack of evidence of any affirmative assistance to support a Penal Code section 32 conviction here, the majority nevertheless affirms defendant's conviction-offering two reasons to justify the result it reaches. Neither withstands scrutiny.
First, the majority opinion states "there is precedent for an accessory conviction under the facts of this case" because California courts have upheld convictions "[u]nder similar circumstances." (Ante at p. 758.) The opinion is wrong on this point-there is nothing similar about the present circumstances and those in the cases the majority cites. Rather, all of the California cases the majority cites are factually dissimilar in the most critical respect:
*769 each involves an affirmative false statement made by the defendant, not, as here, mere silence that constitutes passive non-disclosure.[7] (Ante at p. 758 [citing Plengsangtip , supra , 148 Cal.App.4th at pp. 835-839, 56 Cal.Rptr.3d 165 {"the defendant lied to a detective"}; In re I.M. (2005) 125 Cal.App.4th 1195, 1203-1206, 23 Cal.Rptr.3d 375 {the minor "falsely told *651 police the principal shot the victim in self-defense"}; Duty , supra , 269 Cal.App.2d at pp. 100-105, 74 Cal.Rptr. 606 {the defendant "gave a false alibi to the public investigator"} ].)
Second, the majority argues "defendant's 'silence' was an overt or affirmative act falling within the terms of [Penal Code] section 32 because she had a duty to testify" at the murder suspects' preliminary hearing. (Ante at p. 760.) As outlined by the majority, the argument is that she had a duty to testify because she had been subpoenaed and given immunity, and " 'when an individual's criminal liability is based on the failure to act, it is well established that he or she must first be under an existing legal duty to take positive action.' " (Ante at p. 760.) This argument proves both too little and too much.
It is of course true that criminal liability for failure to act can only attach where there is a duty to act, but that does not resolve the key question, namely, what criminal liability? Defendant refused to testify when properly compelled, and there is a remedy for that: criminal contempt. The majority's argument therefore at most proves that defendant was properly convicted of some criminal offense and offers nothing persuasive to specifically establish that a conviction for "aiding" her brother and the other men, within the meaning of Penal Code section 32, was proper. At the same time, the argument also proves too much because if this is an "affirmative act" case, the majority leaves few that would not be; every possibly recalcitrant witness will get a subpoena, and every such witness, according to the majority, will therefore have a duty to testify and be an accessory to the related felony when refusing, so long as there is proof of the requisite knowledge and intent.[8] I see no reason to believe the Legislature intended to reach so far, and 82 years of criminal practice in this state tends to show otherwise.
C
So far as I am aware, today's decision places California on the extreme outer edge of jurisdictions-indeed, in a group *770 unto itself-concerning the reach of accessory after the fact punishment. As summarized by Professor LaFave, the specifics of what type of aid will suffice to support an accessory conviction vary somewhat from state to state, but "[f]ive kinds of aid usually are proscribed: (1) harboring or concealing the criminal; (2) providing him with certain means (e.g., a weapon, transportation, a disguise) of avoiding apprehension; (3) concealing, destroying or tampering with evidence; (4) warning the criminal of his impending discovery or apprehension; and (5) *652 using force, deception or intimidation to prevent or obstruct the criminal's discovery or apprehension. To this list, a few jurisdictions have [also] added the giving of false information in certain circumstances." (2 LaFave, supra , § 13.6(a), pp. 555-556, footnotes omitted [citing state statutes].) None of these categories extends to mere silence in the face of compulsion to testify.
Moreover, some sister states have partially or completely exempted a defendant from accessory liability where the person who the defendant assists is a close family member. (See, e.g., Mass. Gen. Laws, ch. 274, § 4 ["Whoever, after the commission of a felony, harbors, conceals, maintains or assists the principal felon or accessory before the fact, or gives such offender any other aid, knowing that he has committed a felony or has been accessory thereto before the fact, with intent that he shall avoid or escape detention, arrest, trial or punishment, shall be an accessory after the fact.... The fact that the defendant is the husband or wife, or by consanguinity, affinity or adoption, the parent or grandparent, child or grandchild, brother or sister of the offender, shall be a defence to a prosecution under this section"]; Fla. Stat. § 777.03 ["Any person not standing in the relation of husband or wife, parent or grandparent, child or grandchild, brother or sister, by consanguinity or affinity to the offender, who maintains or assists the principal or an accessory before the fact, or gives the offender any other aid, knowing that the offender had committed a crime and such crime was a third degree felony ... with the intent that the offender avoids or escapes detection, arrest, trial, or punishment, is an accessory after the fact"].)[9] California obviously has no similar exemption, and I do not argue it should. But we as a court should be especially wary of rendering a decision that makes this state a marked outlier, particularly when we have not considered all of the circumstances in which the more severe punishment of the accessory statute might be used in place of the established contempt statutory scheme (e.g., for a defendant who declines to incriminate his or her child when subpoenaed to testify).
IV
If today's decision stands, accessory charges for recalcitrant witnesses are now fair game. The majority believes that is a good thing, and I agree that solving crimes and bringing perpetrators to justice is undeniably important. But there are countervailing considerations when deciding how strongly to punish someone who does not assist in prosecuting crimes, and some *653 weighing of the appropriate penalty in the balance is necessary. The Legislature has already done that weighing, and there are no workarounds.
The People do have an argument that some updating of the long-established contempt sanctions for refusing to testify, at least in certain cases, deserves consideration.
*771 But they are arguing in the wrong place. The halls of the capitol in Sacramento, not Los Angeles-area courtrooms, is where that case must be made.
Defendant's Penal Code section 166 conviction is properly affirmed. I respectfully dissent from the affirmance of defendant's four Penal Code section 32 convictions.
Certified for Partial Publication.*

Judge of the Orange Superior Court appointed by the Chief Justice pursuant to article VI, section 6, of the California Constitution.

A misdemeanor offense, of course, is punishable by six months in jail and a $1,000 fine. (Pen. Code, § 19.)

The gang allegation, if found true, would make the otherwise misdemeanor violation of Penal Code section 166 eligible for punishment as a felony. (Pen. Code, § 186.22, subd. (d).) In rendering its verdict, the jury in this case found the gang allegations not true.

The jury was instructed with CALCRIM No. 440 on the elements of a Penal Code section 32 violation. The instruction informed the jury it must find defendant "either harbored, concealed or aided the perpetrator" after the felony (the alleged murder) had been committed. The jury was provided no further definition of the term "aided."

During the sentencing hearing, the judge noted that over the course of his 45 years in the "business," this case was "one of the first times [he had] ever seen a case in which someone is prosecuted for refusing to testify after they've been given full immunity."

The trial judge stated he found the argument that the four men charged with murder would have been convicted had it not been for defendant's refusal to testify to be "conjecture, speculation and maybe guesswork."

Use of the noscitur a sociis canon (People v. Prunty (2015) 62 Cal.4th 59, 73, 192 Cal.Rptr.3d 309, 355 P.3d 480 ["a word literally 'is known by its associates' "] ) would also come to the same point.

The majority's citations to Federal sentencing guidelines cases are not persuasive for at least two related reasons. First, the Federal sentencing guidelines are advisory guides to punishment and the task, when no guideline clearly applies, is to find one that is most analogous even if dissimilar. The sentencing guidelines have nothing to say about the elements of an offense, and the majority cites no Federal case that holds a mere refusal to testify permits a conviction for being an accessory after the fact. Indeed, in both United States v. Brady (1st Cir. 1999) 168 F.3d 574 and United States v. Ortiz (7th Cir. 1996) 84 F.3d 977, the recalcitrant witnesses were charged with and convicted of criminal contempt, not being accessories after the fact. (Brady , supra , at p. 576; Ortiz , supra , at p. 978.) Second, in the Federal scheme, there is no felony-misdemeanor dichotomy as there is in California; both criminal contempt and being an accessory after the fact are punishable as felonies, with the criminal contempt statute (not the accessory statute as in California) being the one that authorizes more severe punishment-up to life in prison. (18 U.S.C. §§ 3, 401 ; see also United States v. Wright (1st Cir. 2016) 812 F.3d 27, 31-32.)

The grant of immunity to defendant is beside the point and therefore does not cabin the majority's rationale. It is the subpoena that provides the compulsion-granting immunity simply removes an otherwise viable objection to complying with the subpoena.

Other states do not provide an exemption for certain familial relationships but do provide for a reduction in punishment when the felon aided is a close family member. (See generally 2 LaFave, supra , § 13.6(a), p. 557.)