[Crim. No. 17387. In Bank. Sept. 20, 1974.]

In re THOMAS COLEMAN et al. on Habeas Corpus.

**COUNSEL**

Levy, Van Bourg & Hackler, Victor J. Van Bourg and Stewart Weinberg for Petitioners.

Severson, Werson, Berke & Melchior, Nathan R. Berke and J. Mark Montobbio for Respondents.

**OPINION**

**MOSK, J.**—In this proceeding for a writ of habeas corpus we issued an order to show cause in response to allegations that petitioners had been adjudged in contempt of court for violating a temporary restraining order without sufficient evidence to support such a finding. Upon a thorough review of the record, we conclude the judgment was warranted as to certain petitioners, but not as to others.

Petitioners are the Service Employees International Union Local 22, AFL-CIO, also known as the Hospital and Institutional Workers Union Local 22; Thomas Coleman, secretary and chief executive officer of the union's local chapter; William Flagg, local business representative of the union; Gail Zadakis, member of the union; and Sandra LaFoon, employed by the union as a picket.

The hospital workers union involved herein has negotiated employment contracts on behalf of the workers at the Chico Convalescent Hospital

since 1962. In June 1972 the hospital was purchased by the partnership of Evison and Doris Dent. Soon thereafter, the Dents proceeded to institute certain abrupt and unilateral changes in the terms and conditions of employment at the hospital, many of which the union suspected were contrary to the collective bargaining agreement then in force. The union responded by filing unfair labor practice charges with the National Labor Relations Board[1] and by commencing a strike against the hospital.

The hospital continued to function throughout the strike. Normal operations, however, were hampered by continual outbreaks of violence between striking and nonstriking employees and by considerable physical damage to the hospital itself. As a result, on August 24, 1972, the Dents obtained a temporary restraining order which enjoined the union and its officers, members, and agents from posting more than two pickets at each of the three entrances to the hospital and from committing any acts of harassment or intimidation against those persons who continued to deal with the hospital.

Despite the temporary restraining order, the atmosphere of violence persisted and mass picketing occurred on a daily basis. Threats and insults were freely exchanged and led to frequent skirmishes. The hospital was subjected to stink bombs and broken windows, words and signs were painted on its exterior walls, and black dye was poured into the lobby.

On September 15, 1972, the Dents obtained a preliminary injunction and an order to show cause why the union and several of its officers, members, and employees should not be held in contempt of court for violating the temporary restraining order. A hearing followed in December 1972, and petitioners herein were found guilty of contempt. (Code Civ. Proc., § 1218.)

Each petitioner was held responsible for 22 separate acts of mass picketing which occurred subsequent to the issuance of the temporary restraining order. In addition, the union and its officers, Coleman and Flagg, were found to have encouraged or participated in numerous acts of violence and intimidation at the site of the picketing. Flagg was found to have committed six further violations of the restraining order, including incidents of throwing ice and paint, spitting on various hospital representatives, and tailgating the vehicle of a nonstriking hospital nurse.

---

[1]Based upon such charges, the NLRB issued a complaint and held a trial thereon. The Dents were found to be successor-employers and to have committed various unfair labor practices, for which they were ordered, inter alia, to reinstate the strikers with back pay and terminate their replacements if necessary, and to restore the wage rates in effect as of June 1972 until good faith collective bargaining took place.

Zadakis was found to have shouted an obscenity at a hospital security guard, and LaFoon was found to have initiated a fight with a nonstriking employee and to have harassed Doris Dent while she was driving her automobile.

■ ■ ■ ■ The union was ordered to pay a fine of $4,400 for the 22 acts of mass picketing.[2] Flagg was sentenced to serve 90 days in county jail and ordered to pay fines of $2,200 for his role in the mass picketing and $2,000 for the 6 additional violations of the restraining order. Coleman was sentenced to 30 days in jail and fined $2,200 for the mass picketing. LaFoon was sentenced to serve 30 days and fined $500 for the picketing and $200 for the 2 independent infractions. Zadakis was sentenced to 30 days and fined $250 for the picketing and $50 for the separate violation.[3]

■ Petitioners preliminarily challenge the temporary restraining order on its face as unconstitutionally vague and overly broad. They direct their attack at the order's prohibition of more than two pickets "at or about" the three entrances to the hospital. Because the precise perimeters of the protected area are not more explicitly detailed in the order, petitioners allege they were never sufficiently warned of what acts might constitute a violation. We believe, however, that the limitation of pickets "at or about" the entrances to the hospital may be reasonably interpreted so as to have provided adequate notice of the proscribed area and conduct.

■ ■ Because of the penalties imposed, a proceeding to punish an accused for contempt is criminal in nature, and guilt must be established beyond a reasonable doubt. (*Bridges* v. *Superior Court* (1939) 14 Cal.2d 464, 485 [94 P.2d 983].) Petitioners jointly contend the evidence adduced at the hearing in this case was insufficient to support the judgment of contempt. The power to weigh evidence, however, rests exclusively with the trial court. (*In re Buckley* (1973) 10 Cal.3d 237, 247 [110 Cal.Rptr. 121, 514 P.2d 1201]; *In re Ciraolo* (1969) 70 Cal.2d 389, 394 [74 Cal. Rptr. 865, 450 P.2d 241].) Accordingly, it is well settled that our responsibility upon review is merely to ascertain whether there existed any substantial evidence to sustain the jurisdiction of the trial court. (*In re*

---

[2] A writ of habeas corpus, as requested by the union, may be sought to challenge the lawfulness of restraint of a person (Pen. Code, §§ 1473, 1474) or conditions of imprisonment (*In re Harrell* (1970) 2 Cal.3d 675, 682 [87 Cal.Rptr. 504, 470 P.2d 640]). The writ will not lie to review an order of contempt which is punished only by fine, nor is it available to legal entities such as the union. However, we will treat the instant petition by the union as if it had properly requested a writ of certiorari. (See 2 Witkin, Cal. Procedure (2d ed. 1970) p. 1540.)

[3] The order for incarceration and payment of fines has been stayed pending final determination of the merits of the instant petition for habeas corpus.

*Buckley* (1973) *supra*; *In re Ciraolo* (1969) *supra*; *Arthur* v. *Superior Court* (1965) 62 Cal.2d 404, 409 [42 Cal.Rptr. 441, 398 P.2d 777]; *The Times-Mirror Co.* v. *Superior Court* (1940) 15 Cal.2d 99, 115 [98 P.2d 1029]; *Bridges* v. *Superior Court* (1939) *supra*; *In re Bongfeldt* (1971) 22 Cal.App.3d 465, 474 [99 Cal.Rptr. 428]; *Oil Workers Intl. Union* v. *Superior Court* (1951) 103 Cal.App.2d 512, 527-528 [230 P.2d 71].)

In applying this standard to the record before us, we find considerable substantial evidence to support the conclusion that the union and its business representative Flagg were directly responsible for those acts of contempt with which they were charged. **(6)** The testimony and affidavits of the Dents and several witnesses appearing on their behalf convincingly indicate that various union officials, members, and employees, both named and unnamed, planned and carried out the daily mass picketing, and in so doing committed numerous acts of violence, harassment, and intimidation. For such conduct, the organization as an entity must properly be held accountable. (*Oil Workers Intl. Union* v. *Superior Court* (1951) *supra*, 103 Cal.App.2d 512, 552-553.) In so holding, we recognize the "actions of one individual member no more bind the union than they bind another individual member unless there is proof that the union authorized or ratified the acts in question." (*United States* v. *White* (1944) 322 U.S. 694, 702 [88 L.Ed. 1542, 1548, 64 S.Ct. 1248, 152 A.L.R. 1202].) In this case, the evidence uniformly indicates the mass picketing and acts of violence were integral to a concerted organizational effort to debilitate the hospital.

█ Furthermore, Flagg as an individual is consistently singled out in the testimony as having supervised and directed the mass picketing and the concomitant incidents of harassment and intimidation. His involvement in the six specific violations of the restraining order is fully documented in the record. As to him, therefore, the judgment of contempt appears justified.

We find in the record, however, no evidence whatsoever to implicate Coleman in either the mass picketing or the acts of violence for which he has been held in contempt. It is undisputed that Coleman did not personally participate in the daily picketing or the events incident thereto. Moreover, there is uncontradicted testimony that Coleman, who was present at the site of the picketing only three times during the period in question, instructed the strikers to limit the number of pickets to the lawful number and to behave in a peaceful and orderly manner. █ Coleman's role as union officer, standing alone, will not support the trial court's determination that he "conspired, condoned, and permitted to be com-

mitted" the mass picketing and the various transgressions of the temporary restraining order which occurred.

The record also contains no evidence, substantial or otherwise, to indicate Zadakis and LaFoon were in any way responsible for the acts of mass picketing for which they have been convicted. As a member of the union, Zadakis is not subject to civil or criminal liability for the conduct of the union or its officers unless it is shown that she "personally authorized or participated in the particular acts." (*United States* v. *White* (1944) *supra*, 322 U.S. 694, 702 [88 L.Ed. 1542, 1548]; see also *Lawlor* v. *Loewe* (1914) 235 U.S. 522 [59 L.Ed. 341, 35 S.Ct. 170].) The same principle applies with equal force to LaFoon in her capacity as an employee of the union. While substantial evidence supports the conclusion that Zadakis and LaFoon in fact committed the specific violations of the temporary restraining order with which they have been charged, the record is devoid of any suggestion that these petitioners encouraged or joined the incidents of mass picketing committed by the organization.

We do not accept the implication of the trial court that a conspiracy to commit unlawful acts may be established merely by demonstrating that union officers and members share common goals and objectives. The principle established by the United States Supreme Court in *White* bears emphasis: a union and its officers, members, and employees may not be held responsible for the actions of others sympathetic to their cause without competent evidence that the union or the individuals planned, aided, or participated in the illicit conduct.

In view of the foregoing, we discharge the order to show cause. Petitioner Coleman's request for a writ of habeas corpus is granted and he is hereby released from the restraint of the judgment against him. The judgment as to petitioners Zadakis and LaFoon is vacated with directions to the superior court to resentence them in conformity with the views expressed herein. As to the union and Flagg, the petition is denied.

Wright, C. J., McComb, J., Tobriner, J., Burke, J., Sullivan, J., and Clark, J., concurred.