[No. B043803. Second Dist., Div. Three. June 19, 1990.]

DOUGLAS McCANN, Plaintiff and Appellant, v.
MUNICIPAL COURT FOR THE LOS ANGELES JUDICIAL
DISTRICT OF LOS ANGELES COUNTY, Defendant and
Respondent.

**COUNSEL**

Douglas McCann, in pro. per., Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff and Albert J. Menaster, Deputy Public Defenders, for Plaintiff and Appellant.

Cotkin, Collins & Franscell and Dennis M. Edgemon for Defendant and Respondent.

OPINION

POUNDERS, J.*—Appellant, Deputy Public Defender Douglas McCann, was adjudged guilty of multiple acts of contempt in a criminal trial in Los Angeles Municipal Court. He was fined a total of $1,000, on November 16, 1988. He filed a petition for writ of certiorari in the superior court, and the judgment of contempt was affirmed except as to acts for which imposition of an additional fine had been suspended. His notice of appeal from the judgment of the superior court was filed July 18, 1989.

In this appeal, the contemnor faults the order of contempt because (1) he was merely aggressively arguing the issues, (2) trying to persuade the court to change its ruling does not impugn the integrity of the court, (3) he was never warned about his manner, (4) having a discussion with the court cannot amount to contempt for interrupting the court, (5) the written order increased the sentence previously imposed and resurrected grounds for the contempt, (6) he was entitled to a continuance to prepare a defense, (7) the court had already found him in contempt before the hearing, (8) the court's admission that the issue of contempt was in a "grey area" precluded a finding of contempt beyond a reasonable doubt, (9) he had a due process right to call witnesses during the contempt hearing, and (10) more than one contempt for a single course of conduct is barred by Penal Code section 654.

We find these contentions to be without merit, conclude that each act was contemptuous on its face, and affirm the judgment in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

This was the second trial of People v. Victor Hernandez Rodriguez, No. V285786, in the Municipal Court of the Los Angeles Judicial District. The defendant, represented by contemnor, was being tried for a total of 10 charges, including driving under the influence with bodily injury, driving with more than .10 percent alcohol in his blood, hit and run with injuries and property damage, joyriding, and driving without a license.

The genesis of the controversy appears to have arisen during the first trial, conducted with the same participants. During the second trial, contemnor asked Judge Emily A. Stevens whether she "felt different than the last trial, whether he was in fact conducting himself properly, behaving professionally."

---

* Assigned by the Chairperson of the Judicial Council.

The statements which led to the contempt citations occurred during counsel's argument to the jury. A preliminary event was the prosecutor's objection to contemnor's argument:

"MR. MC CANN: I asked him [Mr. Geiger, a news vendor who was an eyewitness to the driver leaving the car after the crash] when he was testifying here, 'Did at any time the police officers tell you they were sure it was him,' and I gave him the transcript and he read that. You'll have to go back and read that. He agreed they were sure it was him, even though he was only 75 percent sure. Then he was shown one photograph by Castorina [the investigating officer], clearly by Castorina, there's no one else that would show the photograph.

"MR. PULONE [the prosecutor]: Objection. Misstates Deputy Castorina's testimony. There has been no evidence that Deputy Castorina showed a photograph to Mr. Geiger.

"MR. MC CANN: Your Honor, that's argument.

"THE COURT: Ladies and Gentlemen, this is very important. Counsel in their arguments are telling you what their interpretation of the evidence is, and if Mr. McCann believes the evidence was one way and Mr. Pulone believes it another way, that's not relevant. They are merely arguing to you at this point. If you have any questions regarding what the evidence was because you have a failure of recollection[,] you may ask the reporter to read back the testimony."

A few moments later, contemnor returned to the same point:

"MR. MC CANN: . . . He was shown one photograph. Later on Castorina was the only one who said he had contact with Geiger after the event. Castorina said there was a phone call but denied showing him a photograph. *Because Castorina also showed Giddens one photograph.*

"Remember the bit about subliminal lying—

"MR. PULONE: Objection. Misstates the evidence.

"THE COURT: Sustained.

"MR. PULONE: I would request that you admonish the jury.

"THE COURT: I have admonished the jury.

"Mr. Mc Cann: On the issue of 'a photo,' twice in the photographs he referred to the photograph as 'a photo.'

"Mr. Pulone: Objection.

"The Court: On this issue, move on.

"Mr. Mc Cann: I will not move on. *I will not move on until you haul me away.* This is the most important issue of the case and *you're not going to convict my client.*

"The Court: Mr. McCann, you are to be in control.

"Mr. Mc Cann: I am totally in control, Your Honor.

"The Court: At this time you are not. . . ." (Italics added.)

The judge immediately excused the jury, advising the jurors to return at 1:30. Contemnor interjected:

"Mr. Mc Cann: My time estimate's much more.

"The Court: Just a minute, Mr. McCann.

"Mr. Mc Cann: My time estimate's much more. That's all.

"The Court: Just a minute, Mr. McCann.

"(The jurors left the courtroom.)

"The Court: Mr. McCann, I talked to you at length before we started.

"Mr. Mc Cann: *You're not my mother.*

"The Court: You are now in contempt.

"Mr. Mc Cann: Fine. That's fine.

"The Court: There is—

"Mr. Mc Cann: Your Honor, my time estimate is going to be much more than an hour. *If you're going to try to convict my client, I'm going to react.*" (Italics added.)

## The Contempt Citation

The judgment of contempt and order of November 16, 1988, imposed a fine of $400 for each of the contempts recorded in paragraph sets 1 and 2, and 3 and 4 below. A fine of $200 was imposed for the contempt described in paragraphs 5 and 6 below:

"1. On November 10, 1988, during the jury trial of *People* v. *Victor Hernandez Rodriguez,* Case No. V285786, wherein citee was acting as attorney for the defendant, and in the immediate view and presence of the Court, citee, in a loud, insolent, and disrespectful manner, stated to the Court as follows: 'I will not move on. I will not move on this issue until you haul me away. This is the most important issue of the case, and you're not going to convict my client.' The foregoing statement by citee was made during citee's closing argument in the immediate view and presence of the jury and an audience seated in the courtroom. As a result of citee's statement and subsequent conduct, the trial was interrupted and the jury was excused from the courtroom. (See Exhibit A, page 15, and page 16, line 1.)

"2. The foregoing statement by citee was contemptuous on its face, and it was, on its face, rude, disrespectful, insulting, offensive, and demeaning of the judicial process in the presence of jurors and others in the courtroom. Further, it directly impugned the integrity of the Court, and it interrupted the course of the proceeding then in progress.

"3. After the jury was excused from the courtroom and in the immediate view and presence of the Court, citee interrupted the Court and stated in a loud, insolent and disrespectful manner, 'You're not my mother.' (See Exhibit A, page 16, lines 14-16.)

"4. The foregoing statement by citee was contemptuous on its face, and it was, on its face, rude, disrespectful, insulting, offensive, and impaired and challenged the respect due the authority of the Court in the presence of others in the courtroom.

"5. Further, in the immediate view and presence of the Court and after citee was told that he would be held in contempt, citee interrupted the Court and stated in a loud, insolent and disrespectful manner, 'If you're going to try to convict my client, I'm going to react.' (See Exhibit A, page 16, lines 17-22.)

"6. The foregoing statement by citee was contemptuous on its face, and it was, on its face, rude, disrespectful, insulting, offensive and demeaning of

the judicial process in the presence of others in the courtroom. Further, it directly impugned the integrity of the Court."

## DISCUSSION

### 1. *Scope of Appellate Review*

■ Contempt is disobedience by action in opposition to the authority, justice or dignity of a court. (*Reliable Enterprises, Inc.* v. *Superior Court* (1984) 158 Cal.App.3d 604, 621 [204 Cal.Rptr. 786].) ■ The sole question before a reviewing court is whether there is substantial evidence to sustain the jurisdiction of the trial court to render the judgment. (*Mitchell* v. *Superior Court* (1989) 49 Cal.3d 1230, 1256 [265 Cal.Rptr. 144, 783 P.2d 731]; *In re Buckley* (1973) 10 Cal.3d 237, 247 [110 Cal.Rptr. 121, 514 P.2d 1201, 68 A.L.R.3d 248].)

■ An order adjudging a person guilty of contempt in the immediate view and presence of the court must recite facts which constitute a contempt. (Code Civ. Proc., § 1211; *Vaughn* v. *Municipal Court* (1967) 252 Cal.App.2d 348, 357 [60 Cal.Rptr. 575]; *Hawk* v. *Superior Court* (1974) 42 Cal.App.3d 108, 115 [116 Cal.Rptr. 713].) The facts must be stated with sufficient particularity to demonstrate "on its face without the aid of speculation" that the conduct constituted a legal contempt. (*In re Baroldi* (1987) 189 Cal.App.3d 101, 110 [234 Cal.Rptr. 286]; *In re Buckley, supra,* 10 Cal.3d at p. 247.) ■ The evidence, the findings, and the judgment are all strictly construed in favor of the contemnor. (*Mitchell* v. *Superior Court, supra,* 49 Cal.3d at p. 1256.)

Review extends to the entire record. (*In re Baroldi, supra,* 189 Cal.App.3d at p. 108; *Chula* v. *Superior Court* (1962) 57 Cal.2d 199, 205 [18 Cal.Rptr. 507, 368 P.2d 107, 97 A.L.R.2d 421].) The power to weigh evidence, however, rests exclusively with the trial court. (*In re Coleman* (1974) 12 Cal.3d 568, 572 [116 Cal.Rptr. 381, 526 P.2d 533]; *Reliable Enterprises, Inc.* v. *Superior Court, supra,* 158 Cal.App.3d at p. 612.)

### 2. *Nature of the Contempt Power*

■ The contempt power is a court's "ultimate weapon." (*People* v. *McKenzie* (1983) 34 Cal.3d 616, 627 [194 Cal.Rptr. 462, 668 P.2d 769].) In the first case by the California Supreme Court to consider the contempt power, the court cautioned that the power to adjudicate direct contempt is necessarily arbitrary and should be used with great prudence, the judge bearing in mind that the exercise of that power is not so much to vindicate the judge's character as to promote the respect due the administration of the

laws. (*People* v. *Turner* (1850) 1 Cal. 152, 153, quoted in *Lyons* v. *Superior Court* (1955) 43 Cal.2d 755, 762-763 [278 P.2d 681].) "The enforcement of an order of contempt in this state is not for the vindication of a private right but is for the maintenance of the dignity and authority of the court, and to preserve the peace and dignity of the people of the State of California." (*H. J. Heinz Co.* v. *Superior Court* (1954) 42 Cal.2d 164, 175 [266 P.2d 5], citation omitted.)

Mr. Justice Mosk, in his dissent in the *Buckley* case, has pointed out the difficulty of contempt sanctions: ". . . As any judge with trial court experience realizes, there inevitably arises that one case in a thousand when the tensions of the argument and the over-zealousness of counsel cause righteous anger to overcome normal tolerance and serenity.

"If at that moment of humanly understandable rage the judge lashes out in response, the resultant contempt citation not infrequently fails to survive appellate review. . . ." (*In re Buckley, supra*, 10 Cal.3d at p. 259, Mosk, J., dis..)

The history of contempt litigation in California is replete with cases rejecting such findings. (See *In re Easterbrook* (1988) 200 Cal.App.3d 1541, 1545 [244 Cal.Rptr. 652] (no written order of contempt); *In re Baroldi, supra*, 189 Cal.App.3d at p. 110 (order fails to recite that conduct occurred in immediate view and presence of court); *Nierenberg* v. *Superior Court* (1976) 59 Cal.App.3d 611, 620 [130 Cal.Rptr. 847] (absence of authority of commissioner to act); *In re Carrow* (1974) 40 Cal.App.3d 924, 927 (absence of clear evidence and precise findings); *Inniss* v. *Municipal Court* (1965) 62 Cal.2d 487, 491 [42 Cal.Rptr. 594, 399 P.2d 50] (no opportunity to explain absence); *In re Martin* (1977) 71 Cal.App.3d 472, 480 [139 Cal.Rptr. 451] (judge personally embroiled with lawyer).) ▮ One reason may be that a civil contempt proceeding is criminal in nature because of the penalties that may be imposed. Proof beyond a reasonable doubt is required, and there is no presumption in support of the contempt order. (*Raiden* v. *Superior Court* (1949) 34 Cal.2d 83, 86 [206 P.2d 1081]; *In re Martin, supra*, 71 Cal.App.3d at p. 480.)

Another reason seems to be that attorneys must be given substantial freedom of expression in representing their clients. (*In re Hallinan* (1969) 71 Cal.2d 1179, 1183 [81 Cal.Rptr. 1, 459 P.2d 255].) One reflection of the difficulty encountered in imposing a contempt citation is the effect it has on trial counsel. "So zealously have reviewing courts sought to preserve the right of the trial advocate's independence in pursuing his cause on behalf of a client that some attorneys have mistakenly concluded that rudeness and discourtesy in the judicial proceeding are accepted methods to be employed

by the successful practitioner. . . ." (*In re Grossman* (1972) 24 Cal.App.3d 624, 629 [101 Cal.Rptr. 176].)

■ Contempt committed in the "immediate view and presence of the court," distinguished as direct contempt, may be treated summarily. (Code Civ. Proc., § 1211.) All that is required is that an order be made reciting the facts, adjudging the person guilty, and prescribing the punishment. (*In re Buckley, supra,* 10 Cal.3d at p. 247; *Arthur* v. *Superior Court* (1965) 62 Cal.2d 404, 407 [42 Cal.Rptr. 441, 398 P.2d 777].) ■ Despite the power to treat direct contempt summarily, however, it is common practice to defer adjudication of contempt for courtroom misconduct to the conclusion of a pending trial unless prompt punishment is imperative. In such case, due process considerations require notice and a hearing with the opportunity to be heard. (*Nierenberg* v. *Superior Court, supra,* 59 Cal.App.3d at pp. 616-617; *Taylor* v. *Hayes* (1974) 418 U.S. 488, 497-498 488 [41 L.Ed.2d 897, 906-908, 94 S.Ct. 2697].)

### 3. *These acts of contempt went beyond merely arguing the issues.*

■ The first challenge raised by contemnor relates to his attempt to argue that only one photograph, rather than a six-person photo lineup, was shown to an eyewitness. Central to his argument is his dual assertion that "counsel was correct about what the witness testified to; and the court eventually relented and permitted defense counsel to make this argument to the jury." He is wrong on both points.

As for the "one photograph" contention, he was trying to argue to the jury that Mr. Geiger, the news vendor, had actually been shown only one photograph, contrary to the testimony of Deputy Castorina. Responding to the district attorney's objection that there was no such evidence, the court merely informed the jury that counsel were "telling you what their interpretation of the evidence is." Thereafter, contemnor attempted to support his contention by asserting that "Castorina also showed Giddens one photograph." The court properly sustained the prosecutor's objection that this misstates the evidence. It was at this point that the court told contemnor to "move on." He responded: ". . . I will not move on until you haul me away. This is the most important issue of the case and you're not going to convict my client." This response was contemptuous on its face. It was an assertion that contemnor would not obey an order and ruling of the court and that the court had assumed the role of the prosecutor. It manifested an attack on the integrity of the court. (See *In re Buckley, supra,* 10 Cal.3d at p. 250, " '[t]his Court obviously doesn't want to apply the law' "; *Gillen* v. *Municipal Court, etc.* (1940) 37 Cal.App.2d 428, 429 [99 P.2d 555], " 'You [defense counsel] won before you started.' "; *In re Ciraolo* (1969) 70 Cal.2d

389, 392-394 [74 Cal.Rptr. 865, 450 P.2d 241], filing a false affidavit stating that the trial judge had said unequivocally that "the Public Defender of Alameda County and his Office are incompetent"; *Hawk* v. *Superior Court, supra*, 42 Cal.App.3d at p. 130, failure to yield to rulings of the court.)

Contemnor was wrong on the evidence. Mr. Giddens, who witnessed the accident from a block away, saw someone run from one car right in front of him. He testified that this person was the defendant in the trial. He testified on both direct and cross-examination that he was shown a folder with six pictures a month after the accident. Although contemnor attempted to impeach the witness with a prior statement, that statement was only: "Yes, he [the officer] asked if I seen [*sic*] a photograph of him would I be able to identify him." This described an attempt by the officer to determine whether a photographic identification was possible. Standing alone, it does not permit the argument that the witness was thereafter *shown* only one photograph of the defendant.

Furthermore, contemnor incorrectly asserts that the trial judge eventually ruled in favor of the argument. After dismissing the jury and taking a break, the court said, "Well, I had the reporter read back the argument, and my sustaining Mr. Pulone's original objection stands. . . . There is a definite part of the testimony and part of the transcript that talks about 'a photo' and Mr. Giddens definitely talked about 'a photo.' The way in which you characterized it the first time was definitely not consistent with the evidence. . . ." The court, however, did permit a related argument.

Contemnor also suggests that there is no support for the objection "misstates the evidence" during final argument. Again he is incorrect. ▮ Misstatements of the record bearing a potential for prejudice may possibly be cured by a prompt objection and an admonition by the court. (*People* v. *Carrera* (1989) 49 Cal.3d 291, 320 [261 Cal.Rptr. 348, 777 P.2d 121].)

▮ He further contends that his duty to this client required him to argue the point even if it meant being held in contempt, citing *Gallagher* v. *Municipal Court* (1948) 31 Cal.2d 784, 796 [192 P.2d 905], which holds that an attorney has the duty to protect the interests of his client, and a right to press legitimate argument and to protest an erroneous ruling. Nowhere in this opinion, or in the others cited by contemnor, is it suggested that counsel has a right to attack the integrity of the court in the process.[1]

---

[1] The case of *Cooper* v. *Superior Court* (1961) 55 Cal.2d 291, 300 [10 Cal.Rptr. 842, 359 P.2d 274], is entirely distinguishable, being dependent on the "unusual circumstances" of a judge interrupting the jury deliberations and making an inappropriate comment on the evidence without previous notice to counsel or an opportunity to be heard. In *People* v. *Travis*

 Clearly contemnor had the right to make an objection. The proper procedure was to ask to approach the sidebar. Contemnor, however, claimed ignorance of this procedure during the discussions immediately following the contempt citation:

"THE COURT: . . . I have told you before, if you disagree with a ruling, you may respectfully request to be heard on that issue if I rule against you. I have always told you that and you know that.

"MR. MC CANN: *No, I don't, Your Honor. No, I don't. No, I don't.*

"THE COURT: You know we have always had side bars and we have always allowed you to be heard and to make your record.

"MR. MC CANN: *No, I haven't. . . .*" (Italics added.)

The sidebar procedure was in fact utilized six times during this short trial, once by contemnor himself. Contemnor offers no explanation for refusing to use this procedure here and thereby both make his objection known and simultaneously avoid a contempt citation.

4. *The cited comments of contemnor were rude, obnoxious, offensive, and insulting.*

Charitably characterizing his comments as an attempt to tell the court that his argument was crucial to the defense and that if the court did not permit counsel to argue this, it would surely result in conviction of his client, contemnor concedes that he could have "made his point more gracefully." Gracefulness, of course, is not required. What is required is a consideration for others and a respect for the court which contemnor lacks.

He states that there is nothing intrinsically boisterous about the "haul me away" comment. Not only was his statement that he would "not move on until you haul me away" a direct and unnecessary challenge to the authority of the court, but also his accusation that "you're not going to convict my client" was a direct attack upon the integrity of the court. Taking place in front of the jury during a crucial phase of the trial, it was a likely cause of confusion that might result in a deadlocked jury. The attack on the focus of

---

(1954) 129 Cal.App.2d 29, 36 [276 P.2d 193], the court similarly sustained an objection which had not been made and then would not allow counsel to be heard as to the propriety of the pending question. The Court of Appeal made it clear that counsel has not only the privilege but the duty "to speak up *at a proper time* and *in a proper manner* in an effort to forestall rulings by the court which he considers erroneous and detrimental to his case . . ." (*Ibid.*; italics added.)

authority in the courtroom was bound to leave the jurors guessing. Perhaps it was calculated to do so. The disruption took place when contemnor was arguing over evidence he had been accused of presenting to confuse the jurors.[2]

There can be no defense for the "You're not my mother" comment. In that pursuit, however, contemnor argues that he has admitted that the statement was "nasty," but in mitigation he says that it was made in the heat of argument at a point where the court was making a blatantly erroneous ruling which cut the heart out of the defense. Not so. We have previously found that the court's ruling was correct. Furthermore, the comment was not made in the "heat of argument." A break had been taken to allow the jury to leave. Contemnor, however, was beyond control. As the jury was leaving, he insisted on making the statement, "My time estimate's much more." When asked to wait, he insisted on repeating the statement.[3] He then made the retort after the jurors had left the courtroom, and the judge reminded him of their earlier conversation. His conduct was indefensible.

The third ground for the contempt citation was the statement, "If you're going to try to convict my client, I'm going to react." Contemnor disingenuously attempts to reconstruct the statement to say "that *if* the court's actions would inevitably result in the conviction of counsel's client, counsel would react to the court's actions." He thereby tries to eliminate the accusation that the court was acting as a prosecutor by trying to convict his client. His attempt fails. His accusation was clear, direct, and contemptuous.

---

[2] During a break in the cross-examination of Mr. Giddens by contemnor, the following took place:

"MR. PULONE: I realize when something is done on cross-examination I have an opportunity to recross to clarify it, but I think in the interest of justice when there is an intentional misleading of the court I think it's something that should be corrected then and there. If the Court could read from line 10, the jury has obviously been misled. . . .

"THE COURT: Just a minute.

"That's very interesting, Mr. McCann, because you have shown this to the witness and had him read that one statement out of context, which makes it sound as if one photo was shown to Mr. Giddens when, in fact, Mr. Pulone was then and there showing Mr. Giddens the photo lineup. . . . You all will have to clear up the issue for the jury, but I'm looking at this transcript and all the witness said was: 'Yes, he asked if I seen a photograph of him would I be able to identify him.' There is nothing in that sentence that indicates that this witness was shown one picture.

"MR. MC CANN: That's a matter of argument, Your Honor.

"MR. PULONE: No, it's not.

"THE COURT: No, it's not. . . ."

[3] The statement apparently was a reference to the initial time estimate for concluding the defense argument, which was mentioned to the jury. The obvious point was that contemnor would have to take more time to undo the court's error. The court, however, had made no error.

### 5. *The court's warning to contemnor was complete and detailed.*

 Citing *In re Hallinan, supra*, 71 Cal.2d at pages 1183-1184, and *In re Carrow, supra*, 40 Cal.App.3d at page 930, for the proposition that a prior warning is required where the contempt consists of "tone of voice" or "an insolent, rude, and disrespectful manner," contemnor asserts that the warning here was insufficient.[4] In this case the statements were described as "rude, disrespectful, insulting, offensive, and demeaning." Each was, however, contemptuous on its face, for which no warning is required. (*In re Buckley, supra*, 10 Cal.3d at p. 250; *In re Hallinan, supra*, 71 Cal.2d at p. 1181.)

In any event, this unheeded warning on the morning before the citation issued was extensive. It covered three incidents which occurred the previous day, including contemnor leaving the courtroom as the judge was coming onto the bench, a confrontational discussion in chambers concerning the possibility contemnor's interview of a witness was overheard by the jurors, and contemnor's threatening approach to the judge sitting at her desk, which resulted in a protective reaction by the Marshal.

The warning by the court only hours before contemnor's continuing misconduct resulted in the contempt citation was detailed and complete. What was inadequate was contemnor's response.

### 6. *Actual disruption of the proceedings did occur but was not necessary to a valid contempt citation.*

 Misconstruing two cases and ignoring the applicable statute, contemnor concludes that "only an actual interruption will qualify as the basis for a contempt." Various acts or omissions which amount to contempts of the authority of a court of justice are described in Code of Civil Procedure section 1209, subdivision (a), of which the first is: "Disorderly, contemptuous, or insolent behavior toward the judge while holding the court, *tending to interrupt* the due course of a trial or other judicial proceeding." (Italics added.) It is the tendency to interrupt, not actual disruption, which is required.

The cases cited by contemnor do not hold to the contrary. The court in *In re Carrow, supra*, 40 Cal.App.3d at page 929, relies upon the *Buckley* opinion to conclude that the conduct condemned here must result in an imminent, not merely a likely, threat to the administration of justice.

---

[4] "If a trial judge had only to state that the contemnor raised his voice and twisted his features, no contempt order could be attacked." (*In re Hallinan, supra*, 71 Cal.2d at p. 1182.)

Contemnor ignores the language in *Carrow* which holds that "physical obstruction to the administration of justice is not necessary. . . ." (*Ibid.*)

Contemnor also ignores the facts of this case, which required the court to interrupt the closing arguments and dismiss the jury in order to deal with his open contempt of court. He suggests that "[e]ven if counsel had merely meekly asked to approach the bench to argue his point, that bench conference would have actually interrupted the court." Not so. That procedure is orderly and commonplace. It does not require excusing the jury, and it does not make public counsel's insults and accusations.

### 7. *The written order of contempt did not increase the sentence.*

The record reveals that the contempt hearing concluded with an oral order by the court imposing a fine of $300 for the first contempt, $300 for the second, and $200 for the third. The written order set the fines at $400, $400, and $200, respectively. ▆▆▆ ▆▆▆ Thus, contemnor contends that as to the first two acts he was denied a right to a hearing on the sentence actually imposed, and the contempt order may not be corrected by the trial court.

His first reference is to *Inniss* and *Arthur* for establishing a right to a hearing on the sentence actually imposed, but those cases refer to the procedural requirements for indirect contempt. (*Inniss* v. *Municipal Court, supra,* 62 Cal.2d at pp. 490-491; *Arthur* v. *Superior Court, supra,* 62 Cal.2d at p. 409.) ▆▆▆ Where direct contempt is involved and it is not treated summarily, the adjudication of contempt and sentencing require notice or "some kind of hearing" or an opportunity to speak in one's own behalf. (*Nierenberg* v. *Superior Court, supra,* 59 Cal.App.3d at pp. 616-617; *Taylor* v. *Hayes, supra,* 418 U.S. at pp. 497-498 [41 L.Ed.2d at pp. 906-908].) There is no requirement, however, that the court hear the contemnor as to the sanctions to be imposed.

▆▆▆ Contemnor's second reference is to cases which hold that the required written contempt order may not be modified. (*In re Baroldi, supra,* 189 Cal.App.3d at p. 111; *Bloom* v. *Superior Court* (1986) 185 Cal.App.3d 409, 412-413 [229 Cal.Rptr. 747].) This does not mean that the written order must match the oral citation precisely. In fact, the court "has discretionary power within the statutory limit to fix, *alter*, remit, suspend or postpone the *punishment.*" (*People* v. *Fusaro* (1971) 18 Cal.App.3d 877, 888 [96 Cal.Rptr. 368], italics added.)

### 8. *Counsel for contemnor was not entitled to a continuance.*

▆▆▆ Contemnor next argues that his counsel was entitled to a reasonable continuance before the hearing, citing *Inniss* and *Arthur* which

involved indirect contempt citations. As we have noted, no hearing is necessary in a case of direct contempt unless the adjudication is continued to another time. (*Nierenberg* v. *Superior Court, supra,* 59 Cal.App.3d at pp. 616-617.) That was done here, and contemnor had notice on Thursday that the hearing would take place on Monday at 1:30, Friday being a holiday. On Monday counsel objected that he did not have sufficient notice, having "only been involved in this for a few hours today." He requested that the court "put the matter over and allow me to mount a legal and factual defense." The court refused.

Counsel was not prepared because contemnor apparently took no action to obtain representation for over three days. Unexplained delay does not establish good cause for a continuance. (See *People* v. *Courts* (1985) 37 Cal.3d 784, 790-791 [210 Cal.Rptr. 193, 693 P.2d 778].) Nevertheless, the matter dragged on through the day and was continued to the following morning. Counsel received his continuance. The only witness he seemed to be able to locate was his client, contemnor, who he now claims had a "right to swear under oath that the court's characterization was untrue." The proposal is meritless. The power to weigh the evidence rests exclusively with the trial court. (*In re Coleman, supra,* 12 Cal.3d at p. 572.) That evidence had already been seen by the trier of fact. Contemnor had no right or need to testify. He could and did explain his conduct.

9. *The hearing was properly conducted.*

■■■ A further complaint is made by contemnor that the court had already found him in contempt and should have transferred the cause to another judge. The finding of contempt, of course, usually precedes the hearing in the case of direct contempt, as we have shown. Only where the judge is "personally embroiled" in the matter is a transfer required. (*In re Buckley, supra,* 10 Cal.3d at pp. 255-256; *Hawk* v. *Superior Court, supra,* 42 Cal.App.3d 108, 131.) There was no personal involvement here. The trial judge was astonishingly cool and professional throughout.

■■■ Contemnor also argues that the judge's statement that they were in a "grey area" precludes a finding of contempt beyond a reasonable doubt. The cases he relies on do not so hold. The truth is that this was appropriately the first time the judge had ever held anyone in contempt. Although she may have been unsure of herself at the beginning, she was resolute, intelligent, and fair in her pursuit of justice. Her unusual restraint is demonstrated by the fine imposed rather than the jail time that could have been justified.

10. *The judgment of contempt was not barred by the double punishment provision of Penal Code section 654.*

 Finally, contemnor asserts that the three punishments amount to double punishment for a course of conduct in violation of Penal Code section 654.[5] The provision does, in fact, apply to contempts. (*Mitchell* v. *Superior Court, supra,* 49 Cal.3d at p. 1246.) It precludes successive citations arising out of the same indivisible course of conduct, such as refusal to answer a series of questions on the same subject. (See *In re Farr* (1976) 64 Cal.App.3d 605, 612-614 [134 Cal.Rptr. 595]; *In re Keller* (1975) 49 Cal.App.3d 663, 671 [123 Cal.Rptr. 223].)

 The crucial question is whether there were separate insults to the authority of the court, not whether, as suggested by contemnor, these insults happened to occur on the same day. (*Reliable Enterprises, Inc.* v. *Superior Court, supra,* 158 Cal.App.3d at pp. 621-626.) In this case, however, the acts of contempt were not connected. The insult to the court in front of the jury was unnecessary. A break was taken, and a new assault was launched against the judge. Each act was distinct. Each act was contemptuous on its face.

## CONCLUSION

This case presents an extreme in trial advocacy. It cannot be questioned that an advocate has the right to aggressively, respectfully and in good faith present contentions on behalf of his or her client. (*In re Buckley, supra,* 10 Cal.3d at p. 253; *In re Hallinan, supra,* 71 Cal.2d at p. 1184.) What seems to have been forgotten here is "the imperative duty of an attorney to respectfully yield to the rulings of the court, *whether right or wrong*" (*People* v. *McKenzie, supra,* 34 Cal.3d at p. 632), as well as an old guideline: "Members of the bar have the right to expect and demand courteous treatment by judges and court attaches; similarly, the court has the right to expect and demand that, in the course of judicial proceedings, advocates will conduct themselves in a courteous, professional manner." (*In re Grossman, supra,* 24 Cal.App.3d at p. 629.)

---

[5] Penal Code section 654 provides in part: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one . . . ."

## DISPOSITION

The judgment of the superior court affirming the three acts of contempt is affirmed.

Klein, P. J., and Danielson, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 20, 1990.