Filed 11/16/15  P. v. Soares CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>RICHARD A. SOARES,<br><br>　　　Defendant and Appellant. | A141993<br><br>(San Francisco County<br>Super. Ct. No. SCN220475) |

　　　Defendant Richard A. Soares appeals from a judgment following his conviction on nine misdemeanor counts of contempt of court for violating a protective order (Pen. Code § 166, subd. (c)(1)).[1]  He argues the trial court erred by refusing to dismiss eight of the nine counts in furtherance of justice pursuant to section 1385.  We find no merit in defendant's contention, and will affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

　　　Defendant began working as a police officer for the San Francisco police department in 2008.  In November 2010, he met Monica Cain at a "bar crawl" in Castro Valley, and the two began dating the following year.

　　　On the evening of January 6, 2012, defendant and Cain met with another police officer, Rick Yick, and his date to attend a birthday party at a nightclub in San Francisco.  Cain became upset because she was standing by herself most of the time and did not know other people at the party.  Cain asked Yick, who was the designated driver, if she

---

[1] All further unspecified statutory references are to the Penal Code.

could leave, but Yick said no. Cain responded by knocking a drink out of Yick's hand. She then left the nightclub and walked around a corner and up a street to "cool off."

Defendant left the nightclub to catch up to Cain. Once defendant caught up to Cain, the two began arguing. Eventually, defendant left the argument and began walking back toward the nightclub. Cain walked back toward the nightclub, as well. While walking back to the nightclub, defendant stopped in an alcove in front of a building. Cain followed defendant into the alcove, and the two began arguing again.

During the argument, Cain allegedly hit defendant in the face several times with a clutch purse she was carrying. What defendant did in response was a subject of dispute at trial. According to Cain, defendant pushed her into a wall behind her, causing the back of Cain's head to slam against the wall. Defendant denied that he pushed Cain into the wall. He claimed he put his hands up in self-defense and that Cain fell into the wall behind her on her own.

What is not disputed is that Cain incurred a laceration on the back of her head as a result of hitting the wall. She was treated by paramedics and taken by ambulance to a local hospital, where the injury was cleaned and stapled. Police officers went to the hospital to question Cain about the incident and take pictures of her head. Cain did not answer the officers' questions because she did not want to get defendant in trouble.

Defendant was charged with felony assault against Cain and arraigned on February 24, 2012. Defendant and Cain were still dating at the time. At the arraignment, the prosecution asked for a criminal protective order that would prohibit defendant from contact with Cain. Cain told the prosecutor and defendant's attorney that she opposed the protective order. Nevertheless, the trial court issued the protective order.[2] The protective

---

[2] The form protective order is entitled "Criminal Protective Order—Domestic Violence"—and was issued pursuant to section 136.2, which states a trial court, "[u]pon a good cause belief that harm to, or intimidation or dissuasion of, a victim or witness has occurred or is reasonably likely to occur," may issue an order that a person "have no communication whatsoever with a specified witness or a victim, except through an attorney under reasonable restrictions that the court may impose." (§ 136.2, subd. (a)(1)(D).)

order stated, among other things, that defendant "must have no personal, electronic, telephonic or written contact" with Cain, and "no contact" with her "through a third party, except an attorney of record," and that he must not come within 150 yards of her. Defendant later testified at trial that he believed that the protective order was unjust, and he and Cain continued their relationship despite its issuance.

A preliminary hearing was held on March 23, 2012. Cain testified at the hearing that defendant never touched her outside of the nightclub. Instead, Cain explained that "I had to have stumbled. I don't know. I was hitting him, he put his hands up. I stumbled backwards and hit my head."

Defendant and Cain remained in a dating relationship after the preliminary hearing. They saw each other in person almost every day. They also communicated through a game called "Words With Friends" that could be installed on their phones. Words With Friends is a two-player word game that is similar to Scrabble, and includes a chat feature that allowed defendant and Cain to send messages to each other.

Defendant and Cain broke up in December 2012, although they continued to communicate using Words With Friends. In February 2013, Cain received a subpoena to testify at defendant's trial. At first, Cain was reluctant to cooperate and planned on giving testimony that would not get defendant in trouble. Her feelings about the case changed in May 2013 after she viewed a video of the nightclub incident showing that defendant left Cain on her own after she injured her head. Cain then gave a statement to the prosecutor that defendant pushed her into the wall outside of the nightclub, and showed the prosecutor photographs of defendant and Cain together after the protective order was issued.

The prosecution dismissed the original assault case against defendant and, on June 25, 2013, convened a grand jury in order to obtain an indictment against defendant on one count of felony assault with force likely to cause great bodily injury, (§ 245, subd. (a)(4)), one count of attempting to dissuade a witness, (§ 136.1, subd. (a)(2)), and nine counts of misdemeanor contempt of court for violating the February 24, 2012 protective

3

order (§ 166, subd. (c)(1)).[3] Cain testified before the grand jury under a grant of immunity. Two days later, the grand jury returned an indictment on all of the counts. The indictment indicated that the nine contempt counts were based on violations occurring for nine consecutive months between June 2012 and February 2013.

A jury trial was held in April and May of 2014. Cain testified. She explained that she did not fall on her own during the incident outside of the nightclub, but that defendant pushed her with both hands, causing Cain to slam her head against the wall. She and defendant made up a different story in which Cain fell backward and hit her head on her own. Cain and defendant came up with this story prior to the preliminary hearing so that "he wouldn't get in trouble." Cain practiced this story several times with defendant before the preliminary hearing because she "didn't want to mess up."

Cain also explained that she and defendant decided to use Words With Friends to communicate because it would make it harder to discover that they were violating the protective order; they were concerned that if they used the normal text messaging feature on their phones, their communications would show up on their phone bills. They communicated through Words With Friends every day and also saw each other in person almost every day. Some of their conversations related to defendant's criminal case. On one occasion in the summer of 2012, defendant told Cain that if someone was trying to subpoena her to testify, she should try to hide from them. He said that if Cain "laid low," then the case would go away. Defendant made similar comments to Cain in November 2012 in a Words With Friends conversation. He told her that "[m]y lawyer wanted me to tell you to lay low," and that "with or without you, they don't have a case, but without you, they might throw it out quicker."

---

[3] Section 166, subdivision (c)(1) states, in pertinent part: "a willful and knowing violation of a protective order or stay-away court order . . . shall constitute contempt of court, a misdemeanor, punishable by imprisonment in a county jail for not more than one year, by a fine of not more than one thousand dollars ($1,000), or by both that imprisonment and fine[.]"

Defendant testified. He denied pushing Cain into the wall outside of the nightclub, saying instead that he put up his hands in self-defense as Cain hit him with her purse, and that Cain fell on her own. Defendant believed it was "ludicrous" that he was charged with assault after the incident. He did, however, admit that he and Cain saw each other regularly after the issuance of the protective order for several months, and that he communicated with her via Words With Friends. Defendant knew that the protective order prohibited him from contacting Cain. He also knew that the process for changing the protective order was to seek relief from a judge and that he was bound by the order until he sought such relief.

Defendant said that he and Cain discussed defendant's criminal trial, but he denied ever trying to dissuade Cain from testifying. Defendant said he never told Cain not to testify in court or avoid service of a subpoena. Defendant acknowledged that his attorney told him that if Cain "la[id] low," it would help defendant's case. Defendant, however, denied that he told Cain to actually "lay low," but was explaining to her "what someone told me might happen if you did that."

Following the prosecution's presentation of the evidence, defendant moved pursuant to section 1118.1 to dismiss the counts for assault and witness dissuasion.[4] The trial court denied the motion prior to closing arguments, but reduced the felony assault count to a misdemeanor.

The jury returned a verdict on May 7, 2014, finding defendant not guilty of the assault and dissuasion counts, and guilty on the nine contempt counts for violating the protective order.

At the sentencing hearing, defendant requested that the trial court exercise its authority under section 1385 to dismiss eight of the nine contempt counts in furtherance

---

[4] Section 1118.1 provides, in pertinent part: "In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal."

5

of justice. He argued that the protective order should not have been issued, that his violation of the protective order constituted "one continuous course of conduct" and should have been charged as one violation, and that charging him with nine counts was "arbitrary and capricious."

The trial court refused to dismiss any of the counts for contempt, stating, in pertinent part: "As to the violations of the court order, Ms. Cain was a willing participant in the violations. In fact, the evidence at trial was that she, in many instances, instigated the violations. On the other hand, [defendant] was a police officer who repeatedly and brazenly violated the very law he swore to uphold. He contended at trial that the court order was, quote, 'unjust.' But as he well knew, the proper way to address that was to bring the matter back before the court, not to decide for himself what the law should be." The trial court sentenced defendant to consecutive three-day terms in the county jail for each of the nine contempt counts. Defendant was given the option to serve the jail sentence through the Sheriff's Work Alternative Program.

Defendant timely filed this appeal.

## DISCUSSION

Defendant's sole contention on appeal is that the trial court abused its discretion by refusing to dismiss eight of the nine counts for misdemeanor contempt pursuant to section 1385.

Section 1385 provides: "The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." (§ 1385, subd. (a).) Section 1385 permits a judge to dismiss not only an entire case, but also part of the case. (5 Witkin, Cal. Crim. Law (4th ed. 2012) Criminal Trial, § 465, p. 725.) " 'The trial court's power to dismiss an action under section 1385, while broad, is by no means absolute. Rather, it is limited by the amorphous concept which requires that the dismissal be "in furtherance of justice." ' " (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 530.) "A determination whether to dismiss in the interests of justice after a verdict involves a balancing of many factors, including the weighing of the evidence indicative of guilt or innocence, the

6

nature of the crime involved, the fact that the defendant has or has not been incarcerated in prison awaiting trial and the length of such incarceration, the possible harassment and burdens imposed upon the defendant by a retrial, and the likelihood, if any, that additional evidence will be presented upon a retrial." (*People v. Superior Court (Howard)* (1968) 69 Cal.2d 491, 505.)  The trial court's ruling is reviewed for abuse of discretion and subject to reversal only if "the ruling in question 'falls outside the bounds of reason' under the applicable law and the relevant facts." (*People v. Williams* (1998) 17 Cal.4th 148, 162.)[5]

The trial court acted well within its discretion in refusing to dismiss eight of the nine counts for contempt.  In denying defendant's request, the trial court concluded that defendant "repeatedly and brazenly" violated the protective order and "well knew [that] the proper way to address that was to bring the matter back before the court, not to decide for himself what the law should be."  The trial court's conclusion was supported by overwhelming evidence.  Defendant admitted that he knew the protective order prohibited him from contacting Cain and that he needed to seek judicial relief to change the order.  Yet, he continued to contact Cain on a regular basis over the course of several months, even using the Words With Friends chat feature as a way to avoid being caught in violation of the protective order.  Given the lengthy duration of defendant's contact with Cain and the strong evidence of his guilt, the trial court's refusal to dismiss in furtherance of justice was clearly not " 'outside the bounds of reason.' " (*People v. Williams, supra*, 17 Cal.4th at p. 162.)

---

[5] Although section 1385 does not give a defendant the right to make a motion to dismiss, a defendant "does have the right to 'invite the court to exercise its power by an application to strike a count or allegation of an accusatory pleading, and the court must consider evidence offered by the defendant in support of his assertion that the dismissal would be in furtherance of justice.' " (*People v. Carmony* (2004) 33 Cal.4th 367, 374.) Moreover, a defendant's inability to move to dismiss under section 1385 does not preclude him or her from arguing on appeal that the trial court erred in failing to dismiss under section 1385. (*Id.* at p. 375.)

As part of his section 1385 argument, defendant contends his conduct should be considered a "continuous course of action" and, therefore, punished with a single conviction. To support this contention, defendant seems to be addressing two cases cited in the prosecution's sentencing memorandum that have nothing to do with whether criminal counts should be dismissed in furtherance of justice under section 1385. In the first case, *McCann v. Municipal Court* (1990) 221 Cal.App.3d 527 (*McCann*), a defense attorney was adjudged guilty of three acts of direct contempt based on his conduct during a criminal trial. (*Id.* at pp. 535-536.) The appellate court rejected the attorney's argument that he was receiving multiple punishments for one act of contempt in contravention of section 654,[6] concluding that "the acts of contempt were not connected." (*Id.* at p. 545.) In the second case, *Donovan v. Superior Court* (1952) 39 Cal.2d 848 (*Donovan*), two landlords were found to have committed multiple acts of contempt for violating an injunction prohibiting them from renting apartments to non-family members and requiring them to remove apartment units from their property. (*Id.* at pp. 854-855.) The California Supreme court rejected their argument that the multiple findings of contempt constituted "unusual punishment" in violation of the United States and California constitutions. (*Id.* at p. 854.) *McCann* and *Donovan* are inapposite to this case because they had nothing to do with whether criminal counts should be dismissed in furtherance of justice under section 1385. Nor has defendant cited any other authority (and we are aware of none) stating that a defendant cannot be convicted of multiple counts of contempt for violating the same protective order.

Defendant asserts that eight of the counts should have been dismissed pursuant to section 1385 because his "conduct did not warrant nine convictions." He supports this vague assertion with a scattershot of arguments, each of which is meritless. First, he argues that the trial court wrongly treated him as a "perpetrator of violence" at the sentencing hearing, even though the jury found defendant not guilty of assault. This is

---

[6] Section 654 proscribes multiple punishment whenever more than one offense is committed during an indivisible course of conduct with a single objective. (§ 654, subd. (a).) Defendant has not raised an argument based on section 654 in this appeal.

not what happened at the sentencing hearing. To the contrary, the trial court stated during the sentencing hearing that "I just want to make crystal clear for the record that there is no conviction of the crime of domestic violence in this case. Indeed the jury found [defendant] not guilty of even simple assault." The trial court refused to dismiss eight counts for contempt based on defendant "repeatedly and brazenly" violating a protective order.

Defendant argues that the prosecutor "arbitrarily and capriciously" chose to charge defendant with nine counts of contempt without indicating how the acts in each month differed from acts in other months. Defendant cites no authority supporting this argument. Moreover, we will not second-guess the prosecution's decision to charge defendant on a month-by-month basis here since the prosecution "ordinarily has sole discretion to conduct criminal cases, including determinations of whom to charge and what charges to file. [Citations.] A prosecutor's decision about filing criminal charges arises from complex law enforcement considerations that are not generally subject to judicial supervision." (*People v. Childs* (2013) 220 Cal.App.4th 1079, 1103-1104.)

Last, defendant argues that statements made at the sentencing hearing by a juror and a police lieutenant indicate that the trial court abused its discretion in not dismissing eight counts of contempt. The juror stated that although she voted defendant was guilty, she believed that it was unjust to issue the protective order against him in the first place. The police lieutenant stated that defendant was a "great" police officer, that he was the real victim in the case, and that he had been brought to trial for political reasons. On this entire record, we cannot conclude that the trial court abused its discretion in not being convinced by these and defendant's other arguments, given the extended duration of defendant's contact with Cain and the strong evidence that he deliberately and consistently ignored the protective order after it was issued.

## DISPOSITION

The judgment is affirmed.

9

_____
Miller, J.

We concur:


_____
Kline, P.J.


_____
Richman, J.


A141993, *People v. Soares*